**MORRIS v. DUNN.**

No. 14482.

Court of Civil Appeals of Texas.
Fort Worth.

Sept. 30, 1942.

Donald & Donald and Joe H. Cleveland, all of Bowie, for appellant.

Homer B. Latham and Benson & Benson, all of Bowie, for appellee.

PER CURIAM.

This is an election contest instituted in the district court of Montague County by G. J. Morris, as contestant, against C. E. Dunn, as contestee, seeking to set aside a certificate of nomination issued by the proper authority of the Democratic Party, declaring C. E. Dunn to be the Democratic nominee for the office of County Commissioner of Precinct No.1 of Montague County, and to have himself declared to be such nominee.

The judge of the trial court filed separate findings of fact and conclusions of law. His findings of fact, which are not challenged by appellant, sufficiently indicate the material facts involved in the contest, and are as follows:

"Findings of Fact.

"1. I find that a run-off primary was held in Commissioners Precinct No. 1, of Montague County, Texas, on August 22, A. D. 1942, in which C. E. Dunn, the contestee, received 386 votes, and G. J. Morris, the contestant herein, received 378 votes, and being a majority of eight (8) votes in favor of the contestee, C. E. Dunn, as certified by Democratic Executive Committee.

"2. That prior to such run-off election, and at this time, and at all times material herein, C. E. Dunn held a commission as, and was duly qualified and acting as a Notary Public in and for Montague County, Texas.

"3. That while C. E. Dunn was a candidate and in said run-off election, he acted as a Notary Public in the voting of thirty (30) absentee ballots, which were assailed in this election contest by the contestant as illegal votes.

"4. That contestee, Dunn, after due application made by voters and after request by them, secured a number of ballots for absentees, all of whom were qualified voters, being over sixty (60) years of age, and that all thirty (30) of these absentee ballots were voted at the homes of said voters, and were

sworn to before contestee, C. E. Dunn, as a Notary Public, of Montague County, Texas.

"5. Contestee, Dunn, could not name a single home out of these thirty (30) where the voter had his absentee ballot in his possession when he, Dunn, arrived at said home, and I find, therefore, as· a fact that contestee, Dunn, carried some of the ballots to the voters.

"6. On each of said thirty (30) envelopes containing the absentee ballots so voted, Dunn signed his name as a Notary Public, affixed his seal to the envelope, and took the acknowledgment of each voter thereto.

"7. The name of C. E. Dunn appeared as a candidate on each of the thirty (30) official ballots so voted absentee.

"8. That the thirty (30) votes were all returned to the County. Clerk's office by Dunn, some by him in person, and some mailed by him, and in one instance, several envelopes containing absentee ballots were returned to the County Clerk in one envelope by Dunn.

"9. That Dunn knew each of the thirty (30) voters, with but one exception, and swore he had met him but one time.

"10. That contestee, Dunn, was not indifferent as to how they voted, and wanted each of said thirty (30) voters to vote for him, and had previously solicited their votes.

"11. That contestee, Dunn, was interested in upholding the legality of each of said thirty (30) votes voted absentee.

"12. That during the trial it became apparent that it was necessary to open the ballot boxes in which these thirty ballots were contained to ascertain if the same, if illegal, would change the result of said run-off election.

"13. That as a result of such inspection of such thirty (30) votes, I find that 28 thereof voted for contestee, Dunn, and two for the contestant, Morris.

"14. That the contestee, Dunn, did not exercise any undue persuasion, any fraud, any undue influence, or any intimidation in the procuring of said votes, and there was no showing made that any of them would have voted otherwise, had any other person taken their acknowledgment.

"Conclusions of Law.

"I, therefore, conclude, as a matter of law from above facts, that C. E. Dunn is the legal nominee of the Democratic Party for County Commissioner, Precinct No. 1, Montague County, Texas.

"(Signed) Earl P. Hall, District Judge, Montague County, Texas."

The sole point of error relied upon by appellant for reversal of the judgment of the trial court reads as follows: "The Trial Court erred in his finding that C. E. Dunn was the nominee of the party thus holding that the 30 absentee votes were legal votes and untainted by the interest of the Notary Public, C. E. Dunn, who was a candidate upon the ballot, voted by these thirty absentees, Appellant insisting all the while, and at this time that such interest disqualified him from officiating as a Notary Public."

In the statement immediately following the above quoted point of error, appellant refers to the findings of fact and conclusions of law of the trial court for a statement of the material facts of the suit. It appears both from appellant's brief and from his oral argument before this court that he has abandoned all grounds for contesting the election save and except the sole ground of the alleged disqualification of the contestee, C. E. Dunn, to act as a Notary Public in administering the statutory oath to the absentee voters which is required by Art. 2956, Vernon's Ann.Civ.St.

Appellant relies upon the rule, which is well established in this State, and which is succinctly stated in 39 Am. Juris., page 220, as follows: "One who is a party to an instrument, no matter how small or nominal is his interest therein, cannot act as Notary Public, with reference thereto." The same rule is recognized in 31 Tex.Jur. 346, and by the authorities there cited.

The third and fourth subdivisions of Art. 2956 provide that the absentee ballot shall be deposited in a ballot envelope furnished by the County Clerk, and that on such envelope there shall be an affidavit made by the elector, the form of which is prescribed in the statute, and which affidavit shall be made before a Notary Public or some other person qualified under the law to take acknowledgments.

Although this form of affidavit is referred to in the findings of the trial court, and in the testimony of the witnesses, as an acknowledgment, it is in fact an affidavit, but such discrepancy in the use of terms is not material here.

564

Subdivision 10 of Art. 2956 provides that the County Clerks, their deputies and officers acting under such Article, shall be considered as judges or officers of election, within the scope of Arts. 215 to 231, inclusive, of the Penal Code of Texas. It seems to us that the services performed by the Notary Public, acting in such case, are in the nature of those performed by election officials. It further seems to us that it would be a violation at least of the spirit of our election laws for a candidate to perform duties in connection with the casting of absentee ballots which are in their very nature those of an election official, with the exception of the acts of the County Clerk, which are specifically provided for in Art. 2956.

We have for consideration, however, not only the rights of the candidate, but also the rights of the electors to express their choice in the election of public officials. In the case before us neither is there any finding of any undue persuasion, fraud, undue influence, or intimidation in the procuring of the votes in question, nor is there any charge here made of such. The sole charge now made is that the votes of the thirty electors in question should not be counted because of the alleged irregularity pertaining to the oath of the electors.

While we are of opinion that it would be wise to prohibit a candidate or his agents from acting in any such capacity, there is no express prohibition against such in the election statutes, nor is there any provision to the effect that ballots cast under such circumstances cannot be counted. If there were a showing of undue persuasion, fraud or undue influence exercised by the candidate so acting, the courts should be quick to declare such votes invalid.

 It is well settled that where there is no showing of fraud, or that the returns were changed or tampered with, a mere irregularity will not prevent the counting of votes where the will and desire of the voters can be ascertained from the ballots, and where there is no law prohibiting the counting of such ballots. Without repeating what is said in them, we refer to such cases as Hooker v. Foster, Tex.Civ.App., 19 S.W.2d 911; Davis v. Walcott, Tex.Civ.App., 96 S.W.2d 817; Ramsay v. Wilhelm, Tex.Civ.App., 52 S.W.2d 757; Gayle v. Alexander, Tex.Civ.

App., 75 S.W.2d 706; and Sterling v. Ferguson, 122 Tex. 122, 53 S.W.2d 753.

While we strongly disapprove of the practice which was followed, we consider, under the showing which has been made here and under the authorities which have been cited, that the thirty absentee votes in question were properly counted.

In view of the fact that the questions involved would become moot before the expiration of the time ordinarily allowed for filing motions for rehearing, or before questions could be certified to the Supreme Court and answered, it is ordered that no motion for rehearing, or to certify questions to the Supreme Court, may be filed.

The judgment of the trial court is affirmed.