**LEE v. WHITEHEAD.**

No. 11473.

Court of Civil Appeals of Texas. San Antonio.

Sept. 23, 1944.

Joe Burkett, of San Antonio, for appellant.

W. T. Scarborough, of Kenedy, for appellee.

SMITH, Chief Justice.

At the July 22, 1944, primary election, F. H. Lee and Gabe Whitehead were rival candidates for the democratic nomination for the office of County Commissioner of Precinct No. 3 in Wilson County. In due course the County Democratic Executive Committee canvassed the returns and certified that Whitehead had received 259 votes at said election as against 257 votes cast for Lee, and was thereupon declared to be the nominee. Lee thereafter, in due course, on August 2, 1944, filed his contest of said election in the District Court of Wilson County, and issue was joined by Whitehead's answer, filed on August 5th. Trial to the court without a jury resulted in judgment denying the contest and declaring Whitehead to have been nominated by a vote of 256 votes as against 253 for Lee, who has appealed. The parties will be referred to as contestant and contestee, respectively.

It appears that contestant filed his contest in the court below on August 2, 1944, following the election on July 22d and the canvass of the returns and certification of the results on July 24th. Contestee filed his answer to the contest on August 5th, which was more than ten days after the certification of the results of the election. Contestant based his contest on alleged illegality of votes cast for contestee in voting precinct 13. In his answer contestee included a cross-action challenging the legality of certain votes cast for contestant in voting precincts 12, 14 and 23, with which contestee sought to offset the votes challenged by contestant in precinct 13. Contestant filed a plea in abatement of said cross-action, upon the ground that it came too late because filed more than ten days after the declaration of the results by the executive committee, in disregard of the provision of Art. 3152, Vernon's Tex.Ann. Civ.Stats., that certificates of nomination shall be subject to review upon allegations of illegality, etc., only in cases in which such allegations are filed "within ten (10) days after the issuance of said certificate."

Obviously, the statutory limitation of the time in which the legality of votes may be challenged for invalidity was intended to operate only upon persons contesting particular elections and seeking to nullify the declared results thereof and substitute different results therefor. In this case contestee was satisfied with the declared result of this particular election and, of course, did not want that result disturbed, and the statute invoked by contestant could not apply to him. But when contestant, who alone was dissatisfied, filed his contest and challenged contestee's right to the nomination, it became the latter's privilege and duty to resist the contest and in doing so he had the right, if asserted before trial, to set up any matters which tended to defeat the contest and sustain the declared result, to-wit: his nomination. Accordingly, contestant's plea in abatement was properly denied. Harwell v. Morris, Tex.Civ.App., 143 S.W.2d 809. We overrule contestant's first point.

In this appeal contestant questions the findings of the trial judge that R. E. Murray, Mr. and Mrs. Fred Anderson, M. T. Odom and Douglas Mills each resided in Commissioner's Precinct No. 3, and in the voting precincts in which they respectively cast their ballots; and contestant also questions the findings of the trial judge (1) that the absentee ballot of Hannah Tefft was legally cast and should be counted for contestee, and (2) that the ballots of Mrs. Joe Katzur and Mrs. Albert Volkmann were invalid because the voters in marking their ballots were assisted by the election officers by the use of other than the English language, to-wit, the Polish language and the German language, respectively. Of course, if there was any material testimony to support those findings, they cannot be disturbed by this Court, and if those findings as to the named voters support the trial judge's conclusions of law thereon then those conclusions are likewise binding on this Court.

Concerning the issue of the place of residence of the named voters the trial judge found the following facts:

"I find that R. E. Murray, a single man of advanced age, was and had been for a number of years a resident of Sutherland Springs voting precinct in Commissioner's

Precinct No. 3; that while he spent a part of his time with his nephew in San Antonio, yet he had his property in the Sutherland Springs community and stayed there a major portion of the time and claimed that as his residence. * * *

' "I find that Mr. and Mrs. Fred Anderson have lived in Commissioner's Precinct No. 3 for a number of years; that they moved to San Antonio some two years ago for the purpose of being near the defense work in which both Mr. and Mrs. Anderson are and have been engaged; that they also maintained their home and have done so, during all their temporary residence in Bexar County, at Sutherland Springs, in Commissioner's Precinct No. 3, Wilson County, Texas, to which they have at all times and still intend to return following their temporary absence; and that on July 22, 1944, they resided in Commissioner's Precinct No. 3 of Wilson County, Texas.

"I find that M. T. Odom, a single man, has resided with his father in Sutherland Springs Precinct No. 13, in Commissioner's Precinct No. 3 of Wilson County, Texas, for many years; that while he cultivated a crop over in Commissioner's Precinct No. 4 of Wilson County, Texas, during the spring of 1944, and spent part of his time camping out on said farm, he at all times lived with his father in Commissioner's Precinct No. 3 and so lived on July 22, 1944. I further find that the evidence is insufficient to show that the Odom place is not situated in Sutherland Springs voting precinct No. 13. * * *

"I find that for the past six years Douglas Mills has lived on the Cox place in Wilson County, Texas, and during all of said years has voted at Marcelina Voting Precinct in Commissioner's Precinct No. 3 of Wilson County, Texas; that while evidence was introduced to show that the Cox place was in Voting Precinct No. 1 of Wilson County, Texas, no evidence was introduced showing that Douglas Mills resided on July 22, 1944, outside of Commissioner's Precinct No. 3, Wilson County, Texas."

We have carefully reviewed the testimony on the issues raised and adopt the trial judge's findings thereon, as copied above.

█ █ It developed upon the trial that the absentee ballot voted by Hannah Tefft was not accompanied by the application or affidavit of the voter, as provided in Art. 2956, Vernon's Ann.Civ.Stats. It appears from the record, and the trial judge found, that although the absentee ballot in question was not accompanied by the required application and affidavit of the voter, yet, nevertheless, it was apparent that such omission was due to the carelessness of the County Clerk in the performance of his ministerial duty in the transaction, and to no failure of duty on the part of the voter, who may not be disfranchised by such failure of a public officer. Moreover, the statutory requirement here in question is not mandatory but only directory, and in the absence of any charge of fraud and of a statutory prohibition against the counting of a ballot not so accompanied, such ballot shall nevertheless be counted as cast. Stratton v. Hall, Tex. Civ.App., 90 S.W.2d 865, and authorities there cited.

█ With reference to the ballots cast by Mrs. Joe Katzur and Mrs. Albert Volkmann, which the trial judge rejected because of his findings that those voters were assisted in preparing their ballots by election officials through the use of languages other than English, to-wit; Polish and German, respectively, the trial judge found that in both cases the voters were so assisted by election officials, that the English language was not used in either case, but that Polish was used in the case of Mrs. Katzur and German in the case of Mrs. Volkmann. The testimony fully supported these findings, which we adopt. As distinguished from the case of irregularities in absentee voting, the statute (Art. 3010) expressly provides that where language other than English is used in explaining and/or assisting voters in casting their ballots, such ballots "shall not be counted, but shall be void for all purposes."

The judgment is affirmed.