## STATE ex rel. SHARP v. MARTIN.

### No. 5665.

Court of Civil Appeals of Texas. Amarillo.

Feb. 19, 1945.

Rehearing Denied March 12, 1945.

R. R. Donaghey, Dist. Atty., and Warlick & Bunnenberg, all of Vernon, for appellant.

W. T. Perkins, of Quanah, for appellee.

HEARE, Justice.

This is an information in the nature of quo warranto to try the right to the office of mayor of the City of Vernon and the case is before this court solely on the pleadings. The appellant, Marvin L. Sharp, was the relator in the court below and the appellee, W. N. Martin, was the respondent. The appellant alleged that at a city election held in Vernon on April 4, 1944, the relator received 1,134 votes while the respondent received 1,153 votes for the office of mayor; that 91 of the votes which were cast and counted were absentee votes and were invalid and void because not in compliance with certain requirements (later listed) of article 2956, Revised Statutes, 1925, as amended, Vernon's Annotated Civil Statutes, article 2956; that if all of such illegal and void absentee votes were excluded from the returns it would be found that the relator, Marvin L. Sharp, received a clear majority and is entitled to the office of mayor.

Because the case is before us only on the pleadings, we deem it necessary to set out in full appellant's allegations of the particular violations of the terms of article 2956 for which the validity of the 91 absentee

votes was challenged, and which constitute all of the grounds forming the basis for the proceedings. The appellant alleged:

"(1) some forty or more absentee votes, the exact number being unknown to plaintiff, did not make application for an official ballot to the City Secretary in writing signed by such absent voter, or by a witness for him at his direction because of his physical disability to make such written application; (2) a great number, the exact number being unknown to plaintiff, of applications were not accompanied by the poll tax receipt or exemption certificate of the absent voter, or his affidavit, in lieu thereof, that the same had been lost or mislaid; (3) a number of ballots, the exact amount being unknown to plaintiff, were cast by absent electors whose ground of application was sickness or physical disability, without a physician's certificate of such sickness or physical disability accompanying such application; (4) in all instances where the absent voter appeared in person before the City Secretary as contemplated by Subdivision 3 of said article, such absent voter or the witness assisting him in the case of his disability, was not furnished by said secretary, nor did such absent voter or the witness assisting him deposit his ballot in, a ballot envelop bearing upon the face thereof the name, official title and post office address of the City Secretary and on the other side of which was the printed affidavit required by said subdivision; (5) in no instance did any absent voter, or any witness assisting any absent voter, fill out, sign or make any affidavit as required by Subdivision 3 of said article; (6) numerous absentee votes, the exact number of which are unknown to plaintiff, were cast by electors who did not make personal appearance before the City Secretary, and did not receive their ballot from the City Secretary by mail, or return the ballots marked by them to the City Secretary by mail, but, on the contrary, numerous ballots were issued by the City Secretary to unauthorized persons, some or all of whom had wagers on the election, and who carried such ballots to the elector in person, and after such elector had marked the same, such unauthorized person returned the purported ballot in person to the City Secretary; (7) in all instances where the absent voter did not personally appear before the City Secretary, such absent voter or the witness assisting him in the case of his disability, was not furnished by said City Secretary, nor did such absent voter or the witness assisting him deposit his ballot in, a ballot envelop bearing upon the face thereof the name, official title and post office address of the City Secretary and on the other side of which was the printed affidavit required by Subdivision 3 of said article; (8) in no instance did any of the absent voters who did not make personal appearance before the City Secretary fill out, make and sign the affidavit required in Subdivision 3 of said Article, nor did any witness do the same for such absent voter; (9) the City Secretary did not receive any absentee ballot in a ballot envelop duly endorsed; (10) the City Secretary did not inclose the same in a larger or carrier envelop as required by Subdivision 5 of said Statute; (11) no judge of said election announced the elector's name or compared the signature upon the application with the signature upon the affidavit on the ballot envelop; and (12) the City Secretary did not keep or post at a conspicuous place in his office for public inspection a complete list of those to whom ballots had been delivered or sent out, stating thereon the elector's name, age, occupation, precinct of the residence and poll tax number or exemption number and the date on which ballot was delivered or mailed, from day to day, all as required by Subdivision 8 of said Article; (13) the City Secretary allowed others not specially designated in writing by him, nor authorized by law, to attempt to perform the duties required of him in respect to absentee ballots."

The appellee first challenged the jurisdiction of the district court to hear and determine the matter. This plea was overruled. The appellee then presented sixteen special exceptions to the appellant's pleadings, basing each exception on, among other grounds, the fact that there is no allegation that any of the electors were for any reason disqualified to vote in said election, that there is no allegation of fraud or unfairness in connection with such election, or that the vote of any elector or the returns of said election was in any way changed or tampered with. Each of these exceptions was sustained by the trial court. Appellant declined to amend, and the court ordered a dismissal of the proceedings.

Since the appellee complains by counterpoint of the overruling of his plea to the

jurisdiction of the trial court to hear and determine the matter, we shall first decide that issue.

This is not an election contest but, as stated, is a proceeding instituted for the purpose of determining the right to an office. Prior to the amendment of article V, section 8, of the Constitution in 1891, it was uniformly held that the district court had no jurisdiction over election contests. Ex Parte Towles, 48 Tex. 413; Williamson v. Lane, 52 Tex. 335; Ex Parte Whitlow, 59 Tex. 273. The district court did, however, have jurisdiction over proceedings by information in the nature of quo warranto to try the right to an office if the value of the office was equal to or exceeded the sum of $500. State Ex Rel Jennett v. Owens, 63 Tex. 261. In 1891, Article V, section 8, of the Constitution was amended, Vernon's Ann.Stat., and gave the district court jurisdiction of contested elections and in addition "general original jurisdiction over all causes of action whatever for which a remedy or jurisdiction is not provided by law or this Constitution * * *."

It is now unnecessary to show the value of the office as a basis for original jurisdiction of the district court in a quo warranto proceeding of this kind. Article 6253, R.C.S.1925.

Article 1008, R.C.S.1925, dealing with the city council, provides, among other things, that "the council shall determine the rules of its proceedings and be the judge of the election and qualification of its own members * * *." This provision was included in article 369 of the 1879 revision of the statutes, in article 413 of the 1895 revision, and in article 814 of the 1911 revision. Thus, it appears that this authority has by legislative enactment rested in the city council without exception since before the year 1879.

In the case of State of Texas v. DeGress, 53 Tex. 387, the Supreme Court, with Justice Gould delivering the opinion, held that the district court had jurisdiction of a suit by information in the nature of quo warranto to determine the right to the office of mayor of the City of Austin, it appearing that the value of the office exceeded $500. The Austin city charter made the city council the judge of the qualifications and elections of its members. This case was decided in 1880. It did not appear that any contest of the issue of the qualifications of DeGress to hold the office of

mayor had been made before the city council. The following year, 1881, the Supreme Court, again speaking through Justice Gould, in the case of Seay v. Hunt, 55 Tex. 545, held in similar proceedings by quo warranto that the city council of the City of Dallas under its charter had the power to determine the eligibility of Seay for the office of mayor and that the decision of the city council on the issue was not subject to revision in the courts in a proceeding by quo warranto. The report of the case reflects that the issue had been adjudicated in a hearing held for that purpose by the city council. The charter of the City of Dallas had a provision similar to the general statute, namely, that the council should be the judge of the election and qualification of its own members. In 1888 the Supreme Court, speaking through Justice Gaines, in the State of Texas v. DeGress, 72 Tex. 242, 11 S.W. 1029, held that the district court had no jurisdiction of quo warranto proceedings to determine whether the respondent was qualified to hold the office of alderman in the City of Austin. It appeared that there was no salary attached to the office and the basis for the decision was apparently the fact that the amount in controversy did not equal $500. It does not appear that a contest of the issue had been presented to and determined by the city council.

A reasonable conclusion, therefore, that can be drawn from the foregoing authorities is that the district court has not been ousted of its jurisdiction to try the right to an office by the terms of article 1008 and the previous articles of which it is the successor, where the issue has not been passed upon in a contest of the same before the city council.

There is no allegation in the record that the validity of the 91 absentee ballots in question has ever been presented to the city council of the City of Vernon for adjudication or determined by that body. The only action taken by the city council has been to examine the returns of the election and declare the results and to install the respondent as mayor. Such action would not preclude a later challenge of the validity of the absentee ballots before a tribunal having jurisdiction, whether it be city council or district court. We therefore conclude that the court below correctly overruled the respondent's plea to its jurisdiction.

All of the points of appeal presented by the appellant challenge the action of the trial court in sustaining the sixteen special exceptions to the allegations in appellant's petition. These points may all be determined together.

Article 2956 of the statutes contains provisions for absentee voting and regulations governing the same. These provisions are numerous and will not be here set out. The detailed allegations contained in plaintiff's petition alleged noncompliance with a number of these provisions. The statute does not provide that in the case of violation of any of the provisions alleged by appellant the ballots shall not be counted. This same statute does, however, contain other provisions that if the absentee ballot is not received by the county clerk on or before the third day prior to the election, the same shall not be voted, and that if it be made to appear to the officers of the election that the elector whose ballot has been marked under the provisions of the absentee voting law has since died then the ballots of such deceased voter shall not be deposited in the ballot box on election day. Neither of these last two mentioned provisions is alleged to have been violated.

A review of the authorities discloses that the Legislature has enacted two classes of election regulations. In one class, it has expressly provided that for the violation of any of certain enumerated regulations the vote shall not be counted. This is exemplified by the two mandatory provisions above mentioned; also by the mandatory provisions of article 3010, which provides that the English language must be used in aiding the voter and for a violation of that provision the ballot shall not be counted; by article 3018, which provides that the election officials shall count no ballot where two or more are folded together, or that does not bear the judge's signature, etc.; by article 3053, which nullifies illegal or fraudulent votes. Other regulations, to which the Legislature has not appended the provision that for a violation thereof the ballot shall not be counted, have been held to be directory and not mandatory. It is apparent that all of the irregularities alleged by the appellant, and

for which he seeks to disfranchise all or a part of the 91 absentee voters, fall within the second class and therefore are not sufficient to justify invalidating any of the votes thus cast. Hence, in the absence of an allegation and showing that the electors, or any of them, were for some reason disqualified to vote in said election or that there was fraud or unfairness in connection with said election, or that the vote of any elector, or the returns of said election, was in any way changed or tampered with, or that some other mandatory statute has been violated, the results of the election should stand as declared. Should the Legislature in its wisdom see fit to provide that for any or all of such irregularities as alleged by appellant, an absentee ballot otherwise valid, should not be counted, that is within its province, but the courts of Texas have throughout the years liberally construed the statutory regulations affecting the right of a voter freely to cast his vote in the expression of his free choice at an election and, in the absence of statutory command, will not disfranchise him.

Appellant has ably contended, both by written brief and by oral argument, that the absentee voting law confers a special privilege and should therefore be strictly construed; that the line of authorities as reviewed and annotated in 121 A.L.R. 939, Subd. II, 942, should be the modern decision in order to prevent any possible fraud in an election through the medium of an absentee ballot. We have carefully reviewed these decisions but we are inclined to the view that the weight of authority in Texas is against such a holding. Our long founded policy of liberality in the construction of our election laws does not warrant, and, in fact, prevents, the conclusion that the regulations which the appellant alleged were violated are mandatory rather than directory. Morris v. Dunn, Tex.Civ.App., 164 S.W.2d 562; McBride v. Cantu, Tex.Civ.App., 143 S.W. 2d 126; Orth v. Benavides, Tex.Civ.App., 125 S.W.2d 1081; Stratton v. Hall, Tex. Civ.App., 90 S.W.2d 865; Ramsay v. Wilhelm, Tex.Civ.App., 52 S.W.2d 757; Hooker v. Foster, Tex.Civ.App., 19 S.W.2d 911.

The judgment is affirmed.