**BRAY v. PEDEN.**

No. 14993.

Court of Civil Appeals of Texas.
Fort Worth.

Sept. 22, 1948.

Joe H. Cleveland, of Bowie, for appellant.

McDonald & Anderson and C. C. McDonald, all of Wichita Falls, for appellee.

McDONALD, Chief Justice.

This is an election contest. In the primary election held on July 24, 1948, appellant and appellee sought the Democratic nomination for the office of sheriff of Clay County. The returns of the election showed that appellee Peden had won by four votes. Appellant contested the election by suit in the district court, charging that 20 of the votes cast for Peden were illegal. Peden charged that 15 of the votes cast for appellant Bray were illegal. The trial court held that 10 of the votes cast for Peden were illegal, and that 8 of the votes cast for Bray were illegal, and declared in effect that Peden had won the election by 2 votes.

On the appeal, appellant Bray charges that the trial court erred in adjudging as illegal 5 designated votes which were cast for appellant, and that he erred in adjudging as legal 8 designated votes which were cast for Peden. By cross-points of error appellee Peden charges that the trial court erred in adjudging as illegal 9 designated votes which were cast for Peden, and in adjudging as legal 3 votes which were cast for Bray.

■ C. C. Connelley, who voted for Bray, testified that he had lived in St. Louis, Missouri, for many years prior to the month of August, 1947, when he moved to Clay County, and that he had lived in Texas less than a year before the primary election. E. D. Smyers and his wife voted for Bray.

Smyers testified that he had moved to Archer County prior to the election and that he and his wife were living in Archer County at the time of the election. To have been entitled to vote in the election in question, the voter must have lived in Texas one year and in Clay County six months next preceding the date of the election. Art. 6, Sec. 2, Constitution of Texas, Vernon's Ann.St. Appellant argues that Connelley and Smyers should not have been allowed to impeach their own votes by testifying that they did not possess the requisite residence qualifications, citing the rule declared in Davis v. State, 75 Tex. 420, 12 S.W. 957, 960: "The declarations of a voter after he has voted, and after the election has closed, in regard to his qualification, are not in derogation of any existing right, and consequently cannot be treated as a declaration against interest. Besides, we think the admission of such testimony would contravene a sound public policy. It would open a door to fraud to permit a voter who may have changed his mind as to his choice of candidates, and who may have become dissatisfied as to the declared result, to affect the determination of a contest by his declarations. We understand the great weight of authority to be in accordance with this ruling."

It is to be noted that the testimony which was held inadmissible in the cited case was not the testimony of the voter, but the testimony of another person concerning the hearsay declarations of the voter. We have not been cited to a case, nor have we found one, holding that the testimony of the voter himself is inadmissible to show his disqualification. The situation is somewhat analogous to that where agency is attempted to be proved by the declarations of the agent. Agency may not ordinarily be proved by the hearsay declarations of the agent, but the testimony of the agent is admissible on the question of agency. Such testimony is original evidence, and is not subject to the objection that it is hearsay. 2 Tex.Jur. 538.

■ Appellant also contends that Mrs. Smyers' vote could not be impeached by the testimony of her husband. His testimony that she lived in Archer County was as competent as would have been the testimony of any other witness familiar with the facts.

Appellant contends that the court erred in declaring illegal the votes of Mr. and Mrs. Bob Cole, who voted for appellant. We are required to view the evidence in the light most favorable to the findings of the trial court, and must sustain such findings if there is evidence of probative force in the record reasonably tending to support them. There was evidence that Mr. and Mrs. Cole had been residing in Fort Worth, in Tarrant County, for the last three years, where Mr. Cole was in the grocery business, owning a half interest in the business, but that he still owned his old homestead in Clay County. The evidence supports the finding of the trial court that Mr. and Mrs. Cole were legal residents of Tarrant County and had abandoned Clay County as the county of their residence.

Appellant contends that the trial court erred in not declaring illegal 8 designated votes which were cast for appellee.

We cannot find any evidence in the record to support the finding that Mr. and Mrs. Tom O'Bryan were legal residents of Clay County. The evidence is one way to the effect that they were residing in Wichita Falls and had been for about two years, and that Mr. O'Bryan was regularly employed there, and there is no evidence to show that he was still claiming Clay County as his home, or that he was merely temporarily employed in Wichita County and intended to return to Clay County at the termination of such temporary employment.

With some doubt in our minds we have arrived at the conclusion that there is evidence of probative value, although it is meager, tending to show that F. C. Haigood, and Mr. and Mrs. John Meeks were temporarily employed elsewhere, but still claimed residence in Clay County and intended to return there after the termination of such temporary employment. Even if we should declare their votes illegal, and also that of A. W. Motley, it would not result in a reversal of the judgment, since, in view of the holdings announced in this opinion, appellee would still have a majority of the legal votes cast.

We believe that the evidence is sufficient to support the finding that A. W. Motley was temporarily residing outside of Clay County but still maintained his residence in Clay County. The testimony in support of this finding is weak, but we are not willing to set aside the trial court's finding as being without any evidence to support it.

The testimony supports the finding that Mr. and Mrs. Sam Harmon were temporarily employed at a state institution in Wichita Falls but still had their legal residence in Clay County.

"But no matter how families may be situated, they are not held to have abandoned their residence in a given community merely because the husband or wife or both temporarily absent themselves on account of their own health, or that of their children, or to serve their government, or because their trade or business or profession takes them elsewhere for varying periods of time." 16 Tex.Jur. 46.

"The question of his (the voter's) residence * * * must be determined by reference to the actual facts and circumstances; and evidence of his intention may be of material value along with other facts. Indeed it has been said that the intention of the individual often has a strong if not a paramount influence in determining residence." 16 Tex.Jur. 48.

The effect of the above holdings is to reduce by two votes the total of those cast for appellee Peden.

Under cross-points of error appellee Peden contends that the trial court erred in declaring illegal five absentees votes which were cast for Peden. The court found that J. J. Massey cast an absentee vote for Peden, that he was not physically disabled and not ill and that he did not vote in contemplation of being absent from the county on the day of the election; that he did not sign before a notary public or the county clerk and that the ballot was not sworn to as required by law; that no fraud was involved in the casting of the ballot and that the will of the voter was expressed; that there was not a substantial compliance with the absentee voting law and that the vote was therefore illegal.

The findings with respect to the other four absentee ballots are substantially the

same, to wit: That there was no written request by the voter for the ballot; that the voter was not physically disabled nor ill and did not contemplate being absent from the county on the date of the election; that appellee Peden took the absentee ballot to the voter; that the ballot was not "voted" before a notary public; that several days after the voter had voted the County Clerk of Clay County took the ballot to the voter's home; that the ballot was then placed in the absentee ballot envelope and the voter's affidavit was made before the county clerk; that no fraud was involved in the casting of the ballot and that the will of the voter was expressed; that there was not a substantial compliance with the absentee ballot law and that the vote was therefore illegal.

Art. 2956, Revised Civil Statutes, Vernon's Ann.Civ.St. art. 2956, provides a carefully planned method for absentee voting, and it might at first seem that no absentee ballot should be counted unless it had been cast in substantial compliance with the requirements of the statute. However, the decisions of our appellate courts are to the effect that requirements of the kind which were not met in the case before us are directory only, and that in the absence of a charge of fraud the ballot should be counted. In Hooker v. Foster, Tex.Civ.App., 19 S.W.2d 911, involving a school election, an absentee ballot was obtained from the secretary of the board of trustees of the school district, marked by the voter and later mailed to the secretary of the board of trustees rather than to the county clerk, and delivered by the secretary of the board of trustees to the judges of the election. It was held that the ballot should be counted. In Stratton v. Hall, Tex.Civ.App., 90 S.W.2d 865, 867, it is declared: "It appears to be well settled that in the absence of a statute prohibiting the counting of ballots because of irregularities either in preparing or casting, and in the absence of fraud or of a showing that the returns were changed or tampered with, ballots cast by qualified voters should be counted." In Lee v. Whitehead, Tex.Civ.App., 182 S.W.2d 744, it was held that an absentee vote should be counted, although the ballot was not accompanied by an application or affidavit of the voter as required by Art. 2956. The court held that the statutory provisions were directory, and that in the absence of any charge of fraud and of a statutory prohibition against the counting of the ballot not accompanied by the application or affidavit, it should be counted. In Davis v. Walcott, Tex.Civ.App., 96 S.W.2d 817, writ dismissed, it was held that absentee votes should not be declared illegal because of the failure of the presiding judge to sign the ballots, the court saying that as to absentee votes the statutory requirement was directory only. In Ramsay v. Wilhelm, Tex.Civ.App., 52 S.W.2d 757, writ refused, it was held that the votes of several absentee voters should not be held illegal because of their failure to deliver or exhibit their poll tax receipts to the county clerk when obtaining their ballots, as required by art. 2956, the court saying that the provision of the statute was directory.

Other rulings of the trial court complained of by appellee need not be noticed, since what we have said requires an affirmance of the judgment. When the five absentee votes cast for appellee, which were held illegal by the trial court, are added to the number of legal votes which the trial court found he had received, the number of votes to which appellee is entitled exceeds those legally cast for appellant.

In view of the fact that the questions involved would become moot before the expiration of the time ordinarily allowed for filing motions for rehearing, or before questions could be certified to the Supreme Court and answered, it is ordered that no motion for rehearing, or to certify questions to the Supreme Court, may be filed.

The judgment of the trial court is affirmed.