## FUGATE v. JOHNSTON.
### No. 12498.

Court of Civil Appeals of Texas.
San Antonio.
Sept. 26, 1952.

Rehearing Denied Oct. 3, 1952.

Potter & Cooper, Walter Groce, George W. Shaffer, Corpus Christi, for appellant.

Charles G. Lyman, Corpus Christi, Gus L. Kowalski, Kingsville, Lee Mahoney, Corpus Christi, for appellee.

PER CURIAM.

This is a primary election contest that concerns the validity of certain absentee votes and certain other votes by persons whose poll taxes were allegedly purchased by a person other than the voters. The trial court sustained exceptions to the contest and, upon contestant's failure to amend, the contest was dismissed, from which this appeal was perfected.

By a margin of seventy votes, Royce C. Johnston was declared the nominee to the

office of County Attorney of Kleberg County over the contestant, J. H. Fugate, Jr. Contestant's pleadings named fifty-eight persons whose absentee votes he claimed were void. Contestant attacked another group of voters in a single box, because allegedly their poll taxes were purchased by one other than the voters themselves. Forty other votes were challenged for various reasons, such as nonresidence of the voter, the fact that a voter was below age, an alien, or was refused the right to vote. For contestant to overcome the declared lead of 70 votes held by Johnston, it was necessary for him to allege facts that brought in question enough votes to overcome that lead. The effect of the trial court's ruling on the special exceptions is to hold that the contestant failed to allege facts that would void and invalidate the necessary number of votes to change the result of the election. Contestant amended two times, and when he refused to amend further the cause was dismissed.

The decision in the case requires an interpretation of the Election Code, the aim of which is to "safeguard the purity of the ballot box" and at the same time to see "that the will of the people shall prevail". Art. 1.01, Vernon's Ann.Civ.Stats. Election Code.

Article 5.05, Vernon's Ann.Civ.Stats., Election Code, relates to absentee voting and reflects that it is largely unchanged from the exact wording of the absentee voting law before January 1, 1952, the effective date of the new Code. We presume that the Legislature in choosing to carry forward those portions of the law meant that those provisions were deemed satisfactory under existing understanding and interpretation.

█ A purpose of the Code is to prohibit error, fraud, mistake, and corruption, and yet it may not be used as an instrument of disfranchisement for irregularities of procedure. Stratton v. Hall, Tex. Civ.App., 90 S.W.2d 865. Since "The will of the legal voters as expressed at the polls is the matter of paramount concern, and, in the absence of any showing of fraud, or reasonable indication that such will has not been fairly expressed and the evidence thereof properly preserved, the courts have been liberal in construing and enforcing as directory only the provisions of the election laws which are not upon their face clearly mandatory." Ramsay v. Wilhelm, Tex.Civ.App., 52 S.W.2d 757, 759; Davis v. State, 75 Tex. 420, 432, 12 S.W. 957, 962; Morris v. Dunn, Tex.Civ.App., 164 S.W.2d 562; McBride v. Cantu, Tex.Civ. App., 143 S.W.2d 126; Stratton v. Hall, supra; Clark v. Hardison, 40 Tex.Civ.App. 611, 90 S.W. 342.

Contestant, in his brief, has grouped his complaints about the method of absentee voting. They are that each of the named fifty-eight persons, (1) though voting absentee, were in Kleberg County on election day and had no intention of being absent when they voted; (2) that those persons were unable to read and write the English language and voted so they could be aided in the Spanish language in marking their ballots, or have some one else mark their ballots; and (3) that those persons did not sign their names to the stubs attached to the official ballot but that their names were written by some one other than the voters on their stubs. It was alleged in contestant's last amendment to his pleadings that an illegal plan was entered upon for the purpose of circumventing the Code and that two persons induced those named voters to vote absentee to accomplish that plan.

█ The burden on contestant is more than that of alleging irregularities. The allegations must be such as, if proved, and we shall consider the allegations as proved, would void the votes favorable to the contestee. Departure from directory provisions of the absentee voting law does not result in the nullification of the votes so long as the qualified voter's will is expressed. The provisions of Article 5.05, Vernon's Ann.Civ.Stats., Election Code, as frequently construed under its predecessor, Article 2956, which has now been repealed and largely re-enacted, have frequently been declared directory rather than mandatory. Before the enactment of the recent code the only portions of what is now Article 5.05 that were declared mandatory were what is now Section 5 of Article 5.05

that relates to the legal time during which absentee voting is permitted at all, and Section 10 of the same article that provides that an elector who dies after voting absentee shall not have his vote counted. Those portions of the article are mandatory as is apparent from reading the article, but, as has frequently been decided, other portions of the article are directory only. Bray v. Peden, Tex.Civ.App., 213 S. W.2d 469; State ex rel. Sharp v. Martin, Tex.Civ.App., 186 S.W.2d 111; Lee v. Whitehead, Tex.Civ.App., 182 S.W.2d 744; Murchison v. Darden, Tex.Civ.App., 171 S.W.2d 220; Morris v. Dunn, Tex.Civ. App., 164 S.W.2d 562; Davis v. Walcott, Tex.Civ.App., 96 S.W.2d 817; Stratton v. Hall, Tex.Civ.App., 90 S.W.2d 865.

■ We are not without precedents that have resolved each of the essential complaints about the absentee voting in line with the above rules that procedures are treated as directory unless the Legislature has declared otherwise. This is so in the instance of absentee voters who actually intended to be present in the county on election day. Bray v. Peden, supra; see Stratton v. Hall, supra. Bearing in mind the difference between the requirements for election day voting and absentee voting, the votes are not invalid in the case of those persons who were unable to read and write the English language and who received aid in marking their ballots. Lee v. Whitehead, Tex.Civ.App., 182 S.W.2d 744. Nor are the votes invalid in the instance of those persons who did not sign their names to the stubs attached to the official ballots. See Davis v. Walcott, Tex. Civ.App., 96 S.W.2d 817. Actually, Article 5.06, with its reference to the procedure of Article 8.15, authorizes the signing of a stub by one other than a voter under certain conditions.

Contestant claims seventy-two other votes were void because a person other than the voters purchased the poll taxes. Here again we must look to the act of the Legislature. If the Election Code invalidates such votes, it must say so. Newton v. Barnes, Tex.Civ.App., 150 S.W.2d 72. The law is contrary to the contestant's contention. "The law does not render poll tax receipts paid by others than the voters invalid, and the qualified voter has the right to vote regardless of how he may have obtained the receipt, if he was qualified under the law to obtain a receipt. The disqualification must attach to the voter himself, and, when in possession of a poll tax receipt, he has the right to vote." Warren v. Robinson, Tex.Civ.App., 32 S. W.2d 871, 872; Reynolds v. Cobb, Tex. Civ.App., 196 S.W.2d 60; Robinson v. Bostrom, Tex.Civ.App., 21 S.W.2d 580; Wallis v. Williams, 50 Tex.Civ.App. 623, 110 S.W. 785.

■■ In connection with this point, as well as with the other points, the contestee leveled many special exceptions calling for particular and certain allegations which were sustained. Pleadings that may be adequate when unexcepted to may prove insufficient when flaws are pointed to. Article 5.11, Vernon's Ann.Civ.Stats., Election Code, requires that the poll tax be paid in person *"or by someone duly authorized by the taxpayer in writing"*. That provision does not suggest that payment of poll taxes by one other than the voter would render such votes null and void. In any event it would require a showing beyond the mere payment of the tax by one other than the voter. It compels a showing also that there was no proper authority to purchase the poll tax. Linger v. Balfour, Tex.Civ.App., 149 S.W. 795. The penal provisions of Article 204, Vernon's Ann.Pen.Code, apply to the person who wrongfully purchases the poll tax rather than the voter. But the significant point in all this discussion of the Code is that there is no legislative command to void the votes in question and disfranchise the voter. State v. Martin, supra; Morris v. Dunn, Tex.Civ.App., 164 S.W.2d 562; Ramsay v. Wilhelm, Tex.Civ.App., 52 S. W.2d 757.

■ The remaining forty votes challenged by the contestant would be insufficient to disturb the declared election result. Had the trial court undertaken a trial upon the basis of all that was alleged, and had the contestant proved every allegation, it would not have been proof such

as would have nullified enough votes in question to change the election result.

The judgment is affirmed. Costs are adjudged against the contestant, and motion for rehearing may be filed up to 10:30 A. M., October 1, 1952.