Raul PRADO and Tony Martinez,
Appellants,

v.

Eugene G. JOHNSON and Manuel
Flores, et al., Appellees.

No. 16652.

Court of Civil Appeals of Texas,
San Antonio.

Aug. 28, 1981.

Rehearing Denied Sept. 24, 1981.

Peter Torres, Jr., San Antonio, for appellant.

Joe P. Martin, Carolyn Barefield Luedke, Houston, for appellee.

Solomon Casseb, Jr., San Antonio, for intervenor.

OPINION

KLINGEMAN, Justice.

This is an election contest of the April 5, 1980, election of the South San Antonio School Board of Trustees. Two unsuccessful candidates, Raul Prado and Tony Martinez, herein called contestants, brought this suit against Eugene G. Johnson and Manuel G. Flores, two successful candidates (contestees) seeking to invalidate 220 absentee ballots cast by mail in such election and to be

declared winners in the election. Contestants assert that all absentee ballots should be invalidated because certain requirements of the Texas Election Code with respect to absentee balloting were not complied with. After the contestants brought the suit, five voters intervened on behalf of themselves and to protect the interests of other voters who cast their mail-in absentee ballots which contestants sought to void. In a trial before the court, the district court ruled contestants' petition should be denied in its entirety and entered judgment for contestees and intervenors.

The contestants, appellants herein, bring this appeal complaining of two points of error as follows: (1) the trial court erred in declaring appellees the winners of the election in that the overwhelming evidence showed the election officials failed to comply with the mandatory requirements of Article 5.05, Subdivisions 5 and 6, Texas Election Code, in the casting of the 220 mail-in absentee ballots, and (2) the trial court erred in accepting and not invalidating mail-in absentee ballots because (a) the canvassing board was not properly constituted and met in closed session; (b) the absentee judges were not properly appointed; (c) the mail-in ballots were received and counted after the period when absentee voting was terminated, and (d) the mail-in ballots were not delivered to the presiding judge of the voter's precinct.

Article 5.05, Subdivisions 5 and 6 of the Texas Election Code provide that certain procedures be followed in the delivery of ballots to election judges and in the counting of ballots. The specific departures from the prescribed procedure complained of by appellants are (1) that the canvassing board did not prepare the poll list of the mail-in voters because this had been done by the individual election judges on a daily basis; (2) the canvassing board, as a board, did not meet to ascertain in each case if the voter was qualified because each of the election judges had individually made the comparisons of signatures, as the ballots came in on a daily basis; and (3) the canvassing board, as a board, did not open the carrier envelopes because these had already been opened and removed from the ballots, and negated the task of the canvassing board from placing the "sealed ballot envelope in the ballot box and the stub in the stub box." Appellees admit that certain prescribed statutory procedures were not followed; however, appellees argue that the provisions of the statute are directory rather than mandatory.

Contestants have made no allegations of fraud, either on the part of the absentee voters or the election officers. There is no evidence that any of the mail-in ballots which were tabulated in the election results were not legally applied for, cast, and returned to the election officials.

The general rule is that the performance of duties placed upon the election officials are directory, unless made mandatory by statute, while those placed upon the voters are mandatory. It has been said many times by our courts that the object of every popular election is to ascertain the will of the qualified electors in the area to be affected thereby upon the issue or issues submitted to them. Our courts have also said that statutory enactments concerning elections must be strictly enforced to prevent fraud but liberally construed in order to ascertain and effectuate the will of the voters. The rule is that statutes regulating the manner of holding an election are merely directory and a departure from their provisions will not ordinarily invalidate an election, unless such departure or such irregularities have affected or changed the results of the election.

This court in *Fugate v. Johnson*, 251 S.W.2d 792 (Tex.Civ.App.—San Antonio 1952, no writ), stated that the aim of the Election Code is to safeguard the purity of the ballot box and at the same time to see that the will of the people shall prevail. The purpose of the Code is to prohibit error, fraud, mistake, and corruption, and yet it may not be used as an instrument of disfranchisement for irregularities of procedure. Since the will of the legal voters as expressed at the polls is the matter of paramount concern, and, in the absence of any

showing of fraud, or reasonable indication that such will has not been fairly expressed and the evidence thereof properly preserved, the courts have been liberal in construing and enforcing as directory only the provisions of the election laws which are not upon their face clearly mandatory. *Id.* at 793.

In *Serna v. Enriguez*, 545 S.W.2d 281 (Tex.Civ.App.—Corpus Christi 1976, no writ), the contestants in an election contest alleged that certain absentee votes should be disregarded because they were not cast in accordance with Article 5.05, Subdivision 2(a), which requires a written application before a voter may cast an absentee ballot. The court stated that Article 5.05, Subdivisions 1(c), (i), (ii), (iii) and (iv), were mandatory because the legislature expressly provided that the ballot shall not be counted in all situations where there was a violation of such Subdivisions. The court held, however, that Subdivision 2(a) was not mandatory because such Subdivision does not provide, as a penalty, that an absentee vote, cast in violation thereof, shall be void. The court further discussed the general rules with regard to whether a statute is mandatory or not, and stated:

> In deciding whether a statute is mandatory or not, the legislative intent is determined from a consideration of the entire act, its nature, its object, and the consequences that follow from the construction thereof. *Nichols v. Aldine Independent School District*, 356 S.W.2d 182 (Tex.Civ. App.—Austin 1939, writ ref'd). 'There is no absolute test by which it may be determined whether a statutory provision is mandatory or directory . . . although the word 'shall' is generally construed to be mandatory, it may be and frequently is held to be directory.' *Chisholm v. Bewley Mills*, 155 Tex. 400, 287 S.W.2d 943 (1956). The general rule is that the performance of duties placed upon the election officials is directory unless made mandatory by statute, . . .' *Fuentes v. Howard*, 423 S.W.2d 420 (Tex.Civ.App.—El Paso 1967, writ dism'd); *City of Roma v. Gonzalez*, 397 S.W.2d 943 (Tex.Civ.App.—San Antonio 1965, writ ref'd n. r. e.).

*Id.* at 283. *See also Thomas v. Groebl*, 147 Tex. 70, 212 S.W.2d 625 (1948); *Gray v. Curry*, 603 S.W.2d 245 (Tex.Civ.App.— Houston [14th Dist.] 1980, no writ); *Little v. Alto Independent School District of Alto, Cherokee County*, 513 S.W.2d 886 (Tex.Civ. App.—Tyler 1974, writ dism'd); *Bagley v. Holt*, 430 S.W.2d 817 (Tex.Civ.App.—Texarkana 1968, writ ref'd n. r. e.).

■ The mail-in absentee voters whose ballots were counted in the election results complied with all mandatory requirements for applying for, making, and returning their ballots. Whatever violations or irregularities there were, were not those of the voters, but of the election officials. It is apparent from a review of the appropriate authorities that the provisions of the Election Code that were violated in this case were not intended by the legislature to be mandatory. These provisions do not call for the voiding of the votes in an election because the exact procedures are not followed by election officials. In this case, we have a situation where the absentee votes in question were undeniably legally cast by the voters. Any error or violations were committed by election officials over which the voters had no control. To vitiate these votes would result in disfranchising those voters who properly cast the absentee ballots. Under the record and applicable authorities we overrule contestants' first point of error.

■ By their second point of error contestants complain (a) that the canvassing board was not properly constituted, and met in closed sessions, (b) the election judges were not properly appointed, (c) some of the mail-in ballots were received and counted after the period in which absentee voting was permitted, and (d) the mail-in ballots were not properly delivered to the presiding judge of the voter's precinct.

The evidence at trial was that 220 absentee ballots were received by the absentee voting clerk at the Administration Building by Delia Esquivel, who is also a judge and member of the three-person canvassing

board. When the absentee clerk received a valid application for an absentee ballot, the voter was mailed a ballot, a ballot envelope into which the ballot was to be placed, and a carrier envelope into which the sealed ballot envelope containing the ballot was to be placed. The voter then mailed the carrier envelope back to the absentee clerk. On a daily basis, as the carrier envelopes were received, the absentee clerk compared the voter's signature on the outside of the carrier envelope to that of the voter's application. If the signature on the application and the carrier envelope were the same, the clerk opened the carrier envelope and attached the carrier envelope to the original application and placed the still sealed ballot envelope inside a jacket envelope which was then placed in the ballot box. If the carrier envelope contained a signature that was at variance from the voter's application, the clerk left the carrier envelope unopened and filed the carrier envelope with the original application.

On April 5, 1980, at the time specified, the canvassing board met. The canvassing board consisted of Delia Esquivel, the absentee clerk at the Administration Building, and Leta Stewart and Benny Esquivel. The canvassing board reviewed all carrier envelopes that Ms. Esquivel had found deficient and concurred in her judgment in all respects. The canvassing board then, in the presence of the poll watchers, unlocked and opened the ballot box and counted the ballots. The full canvassing board removed from the ballot box each jacket envelope, opened it and counted the ballots. The canvassing board subsequently reviewed each application and attached carrier envelope that Ms. Esquivel had previously approved and placed the sealed ballot into the jacket envelope and in each case concurred in the judgment of Ms. Esquivel.

It is apparent that there were some irregularities and violations both in the conduct of the election and the appointment of certain election officials. In our opinion such irregularities and variances were not such as would void a legally cast mail-in ballot properly applied for, issued and returned in accordance with the Code provisions. Although there were some irregularities on the part of the election officials, there has been no showing that those who served did not honestly and faithfully perform their duties without bias or favoritism.

In *Wright v. Board of Trustees of Tatum Independent School District*, 520 S.W.2d 787 (Tex.Civ.App.—Tyler 1975, writ dism'd), the contestants in a school board election complained of numerous irregularities including (a) the election official failed to properly canvass the returns; (b) the election returns were delivered to the wrong party; (c) the statements of canvass of both polling places were in pencil and showed some evidence of tampering and erasures; (d) the poll lists were not certified; and (e) the registers on certain voting machines were not set at zero. The court held that in general the statutes regulating the manner of holding an election are directory, and a departure from their provisions will not ordinarily invalidate an election unless such departure affects or changes the results of the election. The court stated:

In order to prevail, election contestants must allege and prove particularized material irregularities in the conduct of the election; and establish either (1) that a different and correct result should have been reached by counting or not counting certain specified votes affected by the irregularities, or (2) that the irregularities were such as to render a determination of the true will of the majority of the voters impossible. *White v. Hearne*, 514 S.W.2d 765, 767 (Tex.Civ.App., Waco 1974, n.w.h.); *Jordan v. Westbrook*, 443 S.W.2d 616, 618 (Tex.Civ.App., San Antonio, 1969, n.w.h.); *Marks v. Jackson*, 130 S.W.2d 925, 927 (Tex.Civ.App., Galveston, 1939, writ dism.).

*Id.* at 793.

There is no such showing here. In this case we have a situation where there is no allegation or proof of fraud in any phase of the conduct of the election or tabulating results. There seems to be no question but that the votes here in question were legally cast. Contestants have in no manner

shown why such absentee ballots should be thrown out. There is no showing that the irregularities complained of were such as to render a determination of the true will of the voters impossible.

The contestants have not met the burden imposed upon them and all of contestants' points of error are overruled.

The judgment of the trial court is affirmed.