Dan DEFFEBACH, et al., Appellants,

v.

**CHAPEL HILL INDEPENDENT SCHOOL DISTRICT, Appellee.**

No. 12–82–0124–CV.

Court of Appeals of Texas, Tyler.

March 10, 1983.

On November 23, 1981, the Board of Trustees of Chapel Hill Independent School District, in a specially called meeting, adopted a resolution and issued an order for a bond election for the issuance of $10,100,000 in bonds for the District, pursuant to the provisions of the Texas Education Code, Articles 20.01 and 20.04, V.T.C.A., for school buildings, equipment and sites. The Board's order called the election for December 8, 1981, and a copy of said order was published on November 25, 1981, in the *Tyler Morning Telegraph,* a newspaper of general circulation in the area. Absentee voting began on November 25, 1981, as contemplated by Article 5.05 Subdivision 4c, Texas Election Code, V.A.C.S. Following the closing of the polls, a recount of the votes showed the result to be 881 for issuance of the bonds and 871 against issuance of the bonds, a majority of just ten votes.

A contest was timely filed by appellants and the trial judge voided eight "illegal" votes for and twelve "illegal" votes cast against the bonds, thus judicially determining the true results of the bond election to be 873 votes for, and 859 votes against, issuance of the bonds, being a majority of fourteen. The trial court, without the intervention of a jury, denied the contest of appellants and made and filed findings of fact and conclusions of law as discussed later in this opinion.

Appellant brings three points of error as follows:

#### 1.

The error of the trial court in concluding that "Irregularities in the conduct of the election did not invalidate the election" and "The School Bond Election was a legal and valid election."

#### 2.

The error of the Court in concluding that "Irregularities in the conduct of the election did not affect or change the result of the election" and "Irregularities in the conduct of the election were not such

Willis Jarrel, Goodwin, Jarrel & Britain, Tyler, for appellants.

COLLEY, Justice.

This is a school bond election contest.

as to render a determination of the true will of the majority of the voters in the bond election impossible."

### 3.

The trial court erred in not ordering a new election when the undisputed evidence showed that the election officials made no effort to comply with the law for conducting an election.

Appellants, in their argument, claim certain irregularities occurred in the conduct of the election because of the failure of the election officials to enforce certain provisions of the Texas Election Code. Chief among appellants' complaints are:

(1) that absentee voting commenced on the day (November 25, 1981) that notice of the election was published in the Tyler newspaper;

(2) "home made" ballots were used by the first six persons voting absentee on November 25, 1981;

(3) the signature and poll list used had no captions showing the election to which they pertained;

(4) voters who appeared to vote without their voter registration certificates were not sworn as to their qualifications to vote;

(5) that 425 persons voted at said election without presenting to the election officials current voter registration certificates;

(6) the election judge failed to insure that "electioneering" signs were not placed within prohibited areas adjacent to the polling place;

(7) that the election judge reported to certain "school officials" before the polls closed that "the vote is close"; and

(8) that 425 voters were permitted to vote at the election without presenting a current voter registration certificate and without making an affidavit as to their respective qualifications.

As stated earlier, the trial court made and filed findings of fact and conclusions of law in this case. Neither party to this appeal challenges the same. From our examination of the record we conclude that such findings of fact are supported by competent evidence and are therefore binding on this court. *City Bank of Wellington v. Wellington I.S.D., et al.,* 173 S.W.2d 738 (Tex.Civ.App.—Amarillo 1943) affirmed, 142 Tex. 344, 178 S.W.2d 114 (Tex.1944); *Vandyke v. Austin I.S.D.,* 547 S.W.2d 354 (Tex.Civ.App.—Austin 1977, no writ); *Redman v. Bennett,* 401 S.W.2d 891 (Tex.Civ. App.—Tyler 1966, no writ).

The appellants do not allege nor complain on appeal of any fraudulent conduct on the part of either the election officials or voters in the election.

It is our duty here to examine the record to determine whether the will of the majority of the qualified electors of said District participating in the election was thwarted by the irregularities found to exist in the election process. It is clear that the election laws will be strictly enforced to prevent fraud, but liberally construed to effectuate the will of the voters at the election being contested. *Prado v. Johnson,* 625 S.W.2d 368 (Tex.Civ.App.—San Antonio 1981, writ dism'd). Indeed, it has been stated that the purpose of the election code and election laws in general is to prohibit serious error, fraud, mistake and corruption, and "... not be used as an instrument of disfranchisement for irregularities of procedure." *Fugate v. Johnson,* 251 S.W.2d 792 (Tex.Civ.App.—San Antonio 1952, no writ). The general rule is that, absent a showing of fraud or a reliable indication that the will of the majority has not been expressed in a fair manner, the court liberally construes and enforces as *directory* only the provisions of the election code and other election laws which are not by their own terms clearly *mandatory. Id.* at 793; *Prado v. Johnson, supra* at 370.

The trial court's unchallenged findings demonstrate that notice was properly given in accordance with Article 20.04(e), Texas Education Code, and that absentee voting was commenced as contemplated by Subdivision 4c of Article 5.05, Texas Elec-

tion Code. Subdivision 4c provides in pertinent part: "Whenever . . . any election . . . lawfully called for a date which does not permit the full period for absentee voting, (see generally, Article 5.05) the voting shall begin as soon as possible after the ballots become available . . . ."

■ Appellants complain that "home made" paper absentee ballots were voted by the first six absentee voters. We have examined one of these ballots (plaintiff's exhibit No. 19) and find no merit to the complaint. It clearly sets forth the proposition and gives an opportunity to vote both for and against the issuance of the bonds.

■ In our opinion the most serious complaint urged by appellants is that 425 voters who appeared at the polls without presenting to the election officials a current voter registration certificate were permitted to vote without being required to make the affidavit required by Article 8.07 of the Texas Election Code. However, compliance with the provisions of that article have also been held to be *directory* and not *mandatory.* *Walker v. Thetford,* 418 S.W.2d 276 (Tex.Civ.App.—Austin 1968, writ ref'd n.r. e.). The former version of Article 8.07, Texas Election Code, referred to poll tax receipts rather than voter registration certificates, but in all other respects was virtually identical with the present Article 8.07, and hence we believe that *Walker v. Thetford, supra,* is still authority for the proposition just stated.

■ Appellants have the burden of establishing that, because of the irregularities shown, the true result of the election was changed. *Wright v. Board of Trustees,* 520 S.W.2d 787 (Tex.Civ.App.—Tyler 1975, writ dism'd); *Frias v. Board of Trustees,* 584 S.W.2d 944 (Tex.Civ.App.—El Paso 1979, no writ). We have considered each complaint presented by the appellants in their brief and conclude that they have failed to prove by a preponderance of the evidence: (1) that there were any illegal votes sufficient to change the result of said election; and (2) that a determination of the true will of the majority of the qualified voters participating in said election is impossible.

Appellants also argue that the decision in *Peek v. Harvey,* 599 S.W.2d 674 (Tex.Civ. App.—Texarkana 1980, writ dism'd), is controlling here, and that the trial court should have followed *Peek* and declared the bond election void because of the irregularity that 425 citizens were permitted to vote in the bond election who did not present current voter registration certificates and who were not sworn as to their qualification by the election officials. We do not agree that *Peek v. Harvey, supra,* supports the position of the appellants here. In that case, as here, the trial court made and filed findings of fact. Among such findings was that 19 illegal votes were cast and that since the majority voting for the proposition presented in a local option election was only by four votes, the 19 illegal votes constituted such an irregularity as to make it impossible to determine the true results of the election. *Peek v. Harvey, supra,* at 675. No challenge on appeal was made to such findings and the court in *Peek* followed the well-established rule of appellate review that such findings were binding upon it. *Peek v. Harvey, supra* at 675. The roles are reversed here, that is, the trial court denied the contest based on findings of fact which support the judgment below, and in *Peek* the trial court voided the election based on the findings mentioned above which supported that judgment. Applying *Peek v. Harvey* here, we reach a result contrary to the position of the appellants. The holding in *Peek v. Harvey, supra,* was simply that where the trial court's findings are not challenged on appeal, the same are binding on the appellate court.

On submission of this case we permitted counsel to cite additional authorities. Appellants cited Article 9.38b of the Texas Election Code in support of their argument that the trial court should have declared the bond election void. Such article provides in essence that the trial court *may* compel a voter who voted illegally at a special election to reveal the way he voted on any question at said election, or the court *may* declare the election void if the number of illegal votes is sufficient to change the out-

come of the election. In construing Article 9.38b, the Corpus Christi Court of Civil Appeals in *Goodman v. Wise*, 620 S.W.2d 857, 859 (1981, writ ref'd n.r.e.), said: "This statute provides the trial court with wide discretion in this regard, and we will not overrule the trial court's decision unless a clear abuse of discretion has occurred (citations omitted)."

We conclude that the trial court did not abuse its discretion in denying the contest based on the unchallenged findings of fact made by it. Therefore, we overrule appellants' points of error and affirm the judgment of the trial court.

McKAY, J., not participating.