## Ex parte PROGRESO INDEPENDENT SCHOOL DISTRICT.

### No. 2503cv.

Court of Appeals of Texas,
Corpus Christi.

March 17, 1983.

Rehearing Denied April 14, 1983.

Neil Norquest, Ewers & Toothaker, McAllen, for appellant.

Richard W. Harris, Fulbright & Jaworski, San Antonio, Susan Lee Voss, D. Ladd Pattillo, Asst. Attys. Gen., Austin, John F. Dominguez, Mercedes, Charles L. Berry, Vinson & Elkins, Houston, for appellee.

Before BISSETT, YOUNG and KENNEDY, JJ.

## OPINION

YOUNG, Justice.

This is an appeal from a judgment declaring that the bond election conducted by the Progreso Independent School District on January 17, 1981, was in all respects proper and valid. We affirm.

The appellants, all residents and taxpayers of the District, sought before the issuance of the bonds to enjoin the issuance of the bonds in an action filed on August 17, 1981. The District then instituted this action for a declaratory judgment and made a motion to consolidate the injunction suit with the declaratory judgment action. The trial court granted the motion.

The appellants have brought forward four points of error for our consideration. In their first point of error, the appellants claim that representatives of the school board misled the voters by incorrectly informing them about the interest rate the bonds would bear and about the possibility of an increase in the tax rate. The second and third points of error present a challenge of unconstitutionality to the provisions of the Texas Constitution and the enabling statute which authorized the election. The appellants contend that because the Texas laws authorizing the election violate the Equal Protection clause of the United States Constitution (U.S. Const. amend. 14), the election was invalid. And in their fourth point, the appellants claim the bonds were validated to be issued at an interest rate higher than allowed by law.

Before we can discuss the substance of any of these points of error, we must dispose of the District's argument that these issues were not properly before the trial court since the appellants did not give timely notice of an election contest. The appellees direct our attention to Tex. Elec.Code Art. 9.03 (Vernon 1967), which requires that any person intending to contest an election give written notice within thirty days of the return day of the election. This provision is applicable to bond elections. See, *Moore v. City of Corpus Christi,* 542 S.W.2d 720, 722 (Tex.Civ.App.—Austin 1976, writ ref'd n.r.e.); *Kelsey v. Corbett,* 396 S.W.2d 440 (Tex.Civ.App.—El Paso 1965, writ ref'd n.r.e.); *Weinberg v. Molder,* 312 S.W.2d 393 (Tex.Civ.App.—Waco 1958, writ ref'd n.r.e.); *Rawson v. Brownsboro Independent School District,* 263 S.W.2d 578 (Tex.Civ.App.—Dallas 1953, writ ref'd n.r.e.). The thirty-day notice requirement is mandatory and may not be waived by the parties, *Walker v. Thetford,* 418 S.W.2d 276, 280 (Tex.Civ.App.—Austin 1967, writ ref'd n.r.e.) because it is jurisdictional.

■ Since there was no notice of an election contest within thirty days, the appellees argue that all objections relating to the election itself are forever waived. The District urges us that Tex.Elec.Code Art. 9.36 (Vernon 1967) controls. That statute provides that "If no contest of said election is filed and prosecuted in the manner and within the time herein provided for, it shall be conclusively presumed that said election as held and the result thereof as declared are in all respects valid and binding upon all courts. . . ."

The appellants do not dispute their failure to comply with the Election Code. Instead, they argue that the filing of the declaratory judgment action by the Progreso Independent School District put in issue the validity of the election. This District action was filed under Tex.Rev.Civ.Stat. Ann. Art. 717M–1 § 2 (Vernon Supp.1982), which is as follows:

"Declaratory Judgment

Sec. 2 *Any public agency may, prior to or after the issuance and delivery of any securities, institute a proceeding in rem in district court by filing a petition as provided by this Act, for the purpose of obtaining a declaratory judgment as to the authority of the public agency to issue and deliver the securities and as to the legality and validity of all proceedings,* including all actions and expenditures of funds, taken or made and/or proposed to be taken or made in connection with or affecting any securities, *including, in appropriate cases, the validity of the election, if any, at which the securities were authorized,* and the organization or boundaries, if any, of the public agency, any assessments or taxes levied or to be levied, and the lien of the taxes, the validity of any contract or contracts executed or proposed to be executed with respect to the securities, the levy of rates, fees, charges, or tolls, and of proceedings or other remedies for the collection of such taxes, rates, fees, charges, or tolls, the legality and validity of the pledge of any taxes, revenues, receipts, or property, or encumbrance thereon to secure said securities, and as to the legality and validity of the securities and proceedings. The petition may be filed in any district court of Travis County, Texas, or, at the option of the public agency, in any district court of the county in which the public agency maintains its principal office, as a class action against the taxpayers, property owners, and residents, if any, of the public agency, and all nonresidents, if any, owning property therein, and/or all others having or claiming any right, title, or interest in any property or funds to be affected by the proceedings and/or the issuance of the securities, or interested or affected in any way thereby, or by the proceedings, including all actions and expenditures of funds, taken or made and/or proposed to be taken or made in connection with or affecting the securities." (Emphasis added.)

The appellants contend that Article 717m–1 gave the trial court authority to consider the validity of the election. With respect to the thirty-day notice, the appellants point out that the declaratory judgment action was timely filed and that the provisions of Article 717m–1 prevailed. See Article 717m–1 § 13. We agree with the appellants that, although the requirements of the Texas Election Code were not met, the trial court could properly consider the validity of the election in the declaratory judgment action. The District's petition alleged that the election was duly held and requested the court to declare that "all proceedings taken in connection with the authorization and issuance of the proposed bonds . . . be validated and confirmed. . . . ." We hold that the District put in issue those matters of which the appellant complains. Since these matters were properly before the trial court, we now consider their merits.

■ We shall first discuss the constitutional questions. The appellants claim that the Texas laws which authorize bond elections deny equal protection to otherwise qualified voters who do not render property. The pertinent laws are set forth below:

"... the Legislature may authorize an additional ad valorem tax to be levied and collected within all school districts heretofore formed or hereafter formed, for the further maintenance of public free schools, and for the erection and equipment of school buildings therein; *provided that a majority of the qualified property taxpaying voters for the district voting at an election* to be held for that purpose, shall vote such tax...." Tex. Const. Art. 7 § 3

"(a) No such bonds shall be issued and none of the aforesaid taxes shall be levied unless authorized by a majority of the resident, qualified electors of the district, *who own taxable property therein and who have duly rendered the same for taxation,* voting at an election held for such purpose." Tex.Education Code § 20.04.

The United States Supreme Court has issued a series of decisions concerning statutes which exclude otherwise qualified voters from participating in elections. The first of these cases struck down a New York statute which restricted eligibility to vote for school board members to residents who 1) owned (or leased) taxable real property within the district or 2) were the parents of children enrolled in local public schools. *Kramer v. Union Free School District,* 395 U.S. 621, 89 S.Ct. 1886, 23 L.Ed.2d 583 (1969). Because the statute concerned the right to vote, which is a fundamental right, the Court subjected it to exacting examination to determine whether the denial of the right to vote to a class of people served a compelling state interest. *Kramer,* supra at 626, 627, 89 S.Ct. at 1889. The State of New York urged that it was necessary to limit the franchise to those "primarily interested": owners of real property whose tax rates would be determined by the actions of the school board and parents whose children would be affected. *Kramer,* supra at 631, 89 S.Ct. at 1891. The Court held that the State failed to demonstrate that its statutory scheme furthered a compelling state interest. *Kramer,* supra at 633, 89 S.Ct. at 1892. *Cipriano v. City of Houma,* 395 U.S. 701, 89 S.Ct. 1897, 23

L.Ed.2d 647 (1969), the companion case of *Kramer,* also struck down a statute which in a bond election restricted the vote to "property taxpayers."

After the *Kramer* and *Cipriano* cases, the Court further expressed its views concerning property ownership as a prerequisite for voting in a general bond election. In *City of Phoenix, Arizona v. Kolodziejski,* 399 U.S. 204, 90 S.Ct. 1990, 26 L.Ed.2d 523 (1970), the Court explored the justification for restricting the franchise to property owners and rejected them. Another case in the related line of Supreme Court authorities is one in which the Court considered a Texas statute regulating library bond elections, which gave greater weight to the votes of those who owned and rendered property. In *Hill v. Stone,* 421 U.S. 289, 95 S.Ct. 1637, 44 L.Ed.2d 172 (1975), the Court struck down the statute because the State failed to show any compelling state interest for the classification. We believe that an application of the rationale of *Kramer, City of Phoenix* and *Stone* to the state laws in question compels us to hold that the provisions limiting the franchise denies equal protection of the law to those who do not render property.

The Progreso Independent School District, however, did not enforce the property ownership and rendering requirements when it conducted the January, 1981, bond election. Although equal protection was not denied in this particular election, the appellants contend that the election is invalid because it could not be held under an unconstitutional statute. The appellee argues that the offending portions may be severed, leaving the remainder of the enabling statute intact. If we adopt the District's construction, we can uphold the trial court's judgment declaring the election to be valid.

■■■ In order to determine whether we may excise unconstitutional portions of a statute, we must look to the legislature's intent in enacting it. We will sever the invalid provisions and uphold the remainder of a law unless it appears that those enact-

ing it would not have done so without the offending provision, or that the remainder does not present an independent, complete and workable whole without it. *Harris County Water Control & Improvement District v. Albright,* 263 S.W.2d 944, 947 (Tex. 1954). It is obvious that striking out the unconstitutional portions of the bond election law leaves a workable whole. About the legislative intent, we cannot reach a clear cut conclusion, since there is no express statement of the reasons for restricting the franchise to those who own and render property. The Texas Supreme Court, however, has discussed the purpose in *Montgomery Independent School District v. Martin,* 464 S.W.2d 638 (Tex.1971). The Court noted that those who own anything, whether it is a bicycle or a herd of cattle, can vote in a bond election if they get their property on the rolls in any manner in advance of the election. Referring to the difficulty involved in locating and taxing personal property, the Court called the rendering requirement an inducement for those who wish to vote in a school district election to assume their rightful portion of the burden they help to create. *Montgomery,* supra at 641. Thus, it appears that the intent in enacting the rendering requirement was to assist the government in assessing and collecting taxes. We believe that eligibility to vote in bond elections and the assessment of taxes are wholly unrelated and that the people and Legislature of Texas would have enacted the bond election law without the provisions which attempt to facilitate tax collection. Therefore, we hold that after striking down the rendering requirement, the Texas law authorizing school bond elections is valid.

▋ The appellants contend further that the residency requirement denied equal protection to non-resident property owners whose taxes would help retire the bond undebtedness. It is well settled that states may require voters to reside in the political subdivision which is holding the election. See, *Dunn v. Blumstein,* 405 U.S. 330, 344, 92 S.Ct. 995, 1004, 31 L.Ed.2d 274 (1972). Points two and three are overruled.

▋ The fourth point of error complains that the voters did not authorize the issuance of bonds at 12.693502%, the rate at which the bonds were to be issued. Appellants argue that the voters only agreed to issue bonds whose interest rate did not exceed the maximum statutory amount at the time of the election. At that time the maximum rate was 10%. After the voters approved the bond proposal, but before their issuance, the Legislature amended Tex.Rev.Civ.Stat.Ann. Art. 717k–2 § 2 (Vernon Supp.1982) to permit interest as high as 15%. Appellants contend that another election is necessary because the voters consented to an interest rate of 10% or less.

To determine what the voters authorized, we look to the bond proposal itself:

"Shall the Board of Trustees of Progreso Independent School District of Hidalgo County, Texas, be authorized to issue negotiable coupon bonds of said Progreso Independent School District in the principal amount of ONE MILLION NINE HUNDRED THOUSAND DOLLARS ($1,900,000) for the purpose of constructing, repairing, renovating and equipping school buildings in the District; such bonds to mature serially or otherwise not more than forty (40) years from their date; and any issue or series of *said bonds to bear interest per annum* (payable annually or semi-annually) *at any rate or rates as shall be determined within the discretion of said Board of Trustees, provided that such rate of interest shall not exceed the maximum rate per annum authorized by law at the time of the issuance of any issue or series of bonds;* and shall the Board of Trustees of said District be authorized to levy and pledge and cause to be assessed and collected, annual ad valorem taxes on all taxable property in said District sufficient, without limit as to rate or amount, to pay the principal of and interest on said bonds?" (Emphasis added.)

The language of the proposal clearly conveys that the voters approved bonds whose interest did not exceed the maximum rate

in effect at the *time of issuance* not at the *time of the election*. The fourth point of error is overruled.

■ Finally, appellants have alleged, in their first point, that the voters were misled into believing that the bonds would be issued at an interest rate of 9% to 9½% and that the tax rate would not increase as a result. They contend that since the interest rate is higher than anticipated, it will be necessary to increase the interest rate to service the bonds. To prove this contention appellants elicited testimony from school district officials and voters who attended two meetings of the school board before, and near the time of, the bond election. The members of the public testified that school district officials assured them that there would be no need to raise the tax rate and that the interest rate would be 9% to 9½%. The officials explained that their statements were simply projections and recommendations based on the facts available to them at the time and that they made no absolute promises. The trial court was entitled to infer from these explanations that the voters were not misled.

About officials' responsibilities of notice to voters regarding interest rates of bonds, in *Moore v. City of Corpus Christi,* supra, we held that a municipal bond election was not invalid on the ground that the ballot failed to specify the exact rate of interest. In the instant case, the voters did authorize the District's official governing body members to use their discretion in setting the rate. Although it would have been salutary if the school District's officials could have been more accurate in their interest rate predictions, we hold that the proposition as submitted gave sufficient notice to the voters that the rate could be higher than initially anticipated (9% to 9½%). The first point is overruled.

The judgment of the trial court is affirmed.