**Bob HONTS and Herman "Tex" Moten, Sr., Appellants,**

v.

**Jim SHAW and Mark A. Wallace, Appellees.**

No. 03–98–00217–CV.

Court of Appeals of Texas, Austin.

Sept. 8, 1998.

Doug W. Ray, Randall B. Wood, Ray, Wood & Fine, L.L.P., Austin, for Appellants.

Douglas M. Becker, Gray & Becker, Austin, for Appellees.

Before POWERS, JONES and DALLY, JJ.*

JONES, Justice.

Appellants Bob Honts and Herman "Tex" Moten, Sr., filed an election contest challeng-

---

* Before Carl E.F. Dally, Judge (retired), Court of Criminal Appeals, sitting by assignment. *See*

Tex. Gov't Code Ann. § 74.003(b) (West 1988).

ing the outcome of the Republican primary election held on March 10, 1998, for the Republican nomination of County Commissioner, Precinct Two and Precinct Chairman, Election Precinct 250. The district court rendered judgment upholding the election and declaring appellee Jim Shaw as the Republican nominee for County Commissioner and appellee Mark A. Wallace as Election Precinct 250 Chairman. We will affirm the trial court's judgment.

## THE CONTROVERSY

The following matters are uncontested. On December 1, 1997, Patrick O'Grady became Travis County Republican Party primary administrator for the primary election scheduled for March 10, 1998. On December 1, 1997, Patrick McNamara became deputy primary administrator.

O'Grady and McNamara began recruiting election workers in early December by sending mailings to previous precinct chairs from the 1996 election, soliciting assistance to serve as election workers and to find other volunteers. Despite their efforts, it became apparent by January 1998 that they were experiencing difficulty in recruiting enough election workers to staff the polling places in all election precincts fixed by the county commissioners court. *See* Tex. Elec.Code Ann. § 42.002 (West Supp.1998).

In a meeting held January 13, 1998, the Travis County Republican Party Executive Committee, of which Republican County Chairperson Jan Galbraith was a member, delegated authority to O'Grady to "appoint election judges at his discretion ... without the approval of the executive committee to facilitate the process" and "to make any and all decisions regarding the location and possible consolidation of some of the precinct polling places." O'Grady made McNamara responsible for Commissioner's Precincts Two and Three, and he made two other part-time employees in the office responsible for Precincts One and Four.

O'Grady continued to aid McNamara and the other part-time employees in their efforts to secure polling places and election workers. Problems persisted nevertheless. These problems were not unlike those encountered by the Democratic Party. The Travis County Commissioners Court had formed numerous new election precincts in Commissioner's Precinct Two, and a disproportionately high number of boundary changes affecting Precinct Two made it more difficult to secure polling places in each precinct. The Travis County Clerk's office agreed to aid both the Republican and Democratic parties in their efforts to find polling places in each precinct, but was unsuccessful in locating polling places of sufficient size in some precincts. In addition, attempts were made to recruit additional volunteers from precincts that had their full quota of election workers. In the end, however, the efforts of O'Grady, McNamara, and others were less than successful.

O'Grady decided it was necessary to join some of the polling places. He attempted to join polling places based upon geographic proximity, tried to avoid joining three polling places together, attempted to join polling places where extra workers were available, and worked to join precincts with lower numbers of registered voters. Election precincts in different commissioner's precincts were not joined. By election day, nineteen polling places out of sixty-six were joined in Commissioner's Precinct Two. Notice of the joined precincts was effectuated by two newspaper listings of polling places for Precinct Two in the *Austin American–Statesman* and by posting at previous polling places within the election precincts. The first newspaper listing on March 8, 1998, was correct. The newspaper listing on election day, March 10, was correct except for a partial error pertaining to Election Precincts 233 and 249. At previous polling places, particularly those used in the November 1996 election, notices were posted informing the voters of the polling place for the March 10 Republican Party primary election. The postings were not systematic, however, and notices were not posted in all the nineteen precincts that were joined.

O'Grady prepared a list of joined precincts to post on the bulletin board next to the Travis County Commissioners Court by February 17, 1998, which Chairperson Galbraith signed. After a discussion with an employee of the election division of the clerk's office on

February 17, however, O'Grady concluded there was no legal requirement to post notice of the joined precincts at the County Commissioners Court. Consequently, he did not post the notice.

Appellants adduced some evidence that O'Grady and McNamara held personal opinions favoring certain Republican candidates over others and that their political views were more conservative. The trial court found, however, that there was no evidence that their views or opinions influenced their actions as primary officials. The court concluded that neither O'Grady nor McNamara intended to mislead any voters or attempted to give any unfair advantage to a particular candidate. The court held specifically that there was no fraud or malicious motive on the part of either O'Grady or McNamara, and that there was no evidence that the election was unfair. Accordingly, the court concluded that there was no reason to void the election.

## DISCUSSION AND HOLDINGS

### Subject–Matter Jurisdiction

In two cross-points of error, appellees assert that the trial court lacked jurisdiction to hear appellants' election contest on two grounds: (1) appellants failed to deliver a copy of their petition to the Secretary of State in violation of section 232.008(d) of the Texas Election Code (Election Code); and (2) appellants failed to secure a trial setting within five days of the date by which appellees were required to answer the petition in violation of section 232.012(d) of the Election Code. The trial court found that the deadlines prescribed by sections 232.008(d) and 232.012(d) of the Election Code were not jurisdictional and concluded that appellants' failure to comply with the requirements did not deprive the court of jurisdiction.

Appellees contend the procedural requirements for a contested election are mandatory because they exist only by and to the extent authorized by statute. See State v. City of Azle, 588 S.W.2d 666, 670 (Tex.Civ.App.—Fort Worth 1979, writ ref'd n.r.e.) (holding failure to comply with thirty-day notice requirement barred attack on election). Relying on cases decided on the basis of notice provisions in an earlier version of the Election Code, requiring that notice of intent to contest be served on the winner of the election, appellees argue that notice to the Secretary of State under section 232.008(d) is also mandatory and jurisdictional and, therefore, cannot be waived. See Jordan v. Norman, 711 S.W.2d 358, 359 (Tex.App.—Beaumont 1986, no writ); Mitchell v. Carroll Indep. Sch. Dist., 435 S.W.2d 280, 283 (Tex.Civ. App.—Fort Worth 1968, writ dism'd w.o.j); see also Ex parte Progreso Indep. Sch. Dist., 650 S.W.2d 158, 160 (Tex.App.—Corpus Christi 1983, writ ref'd n.r.e.); Walker v. Thetford, 418 S.W.2d 276, 280 (Tex.Civ. App.—Austin 1967, writ ref'd n.r.e.). As to the setting of the trial date, appellees also argue that strict compliance is required under section 232.012(d) of the Election Code; however, appellees have not cited any authority in support of this jurisdictional claim.

Section 232.008 of the Election Code provides in pertinent part: "A contestant must deliver a copy of the petition to the secretary of state by the same deadline prescribed for the filing of the petition." Tex. Elec.Code Ann. § 232.008(d) (West Supp.1998). Unlike the notice provisions of the former Election Code considered in the decisions relied upon by appellants, section 232.008(d), which was added by amendment in 1997, requires notification of a non-party to the contest for informational purposes only. While Texas courts have held some filing requirements mandatory and jurisdictional, the decisions, including those relied upon by appellants, have involved either the court-filing deadline or notice of the filing to the contestee. See Jordan, 711 S.W.2d at 359; Ex parte Progreso Indep. Sch. Dist., 650 S.W.2d at 160; Mitchell, 435 S.W.2d at 283; Walker, 418 S.W.2d at 280.

Further, under the former Election Code, article 9.36 provided that failure to contest the election within the time prescribed would result in a presumption that the election results were valid and binding on the courts. See Mitchell, 435 S.W.2d at 283. Thus, the court concluded in Mitchell that failure to comply with the filing deadline required dismissal for lack of jurisdiction. Id. Section

232.008(d) of the Election Code does not specify the consequence for non-compliance. The Texas Supreme Court has held that when a statute does not specify the consequences for failing to give a required notice, the courts must look to the purpose of the statute for guidance. *See Hines v. Hash,* 843 S.W.2d 464, 468 (Tex.1992); *see also Chisholm v. Bewley Mills,* 155 Tex. 400, 287 S.W.2d 943, 945 (1956) ("If the statute directs, authorizes or commands an act to be done within a certain time, the absence of words restraining the doing thereof afterwards or stating the consequences of failure to act within the time specified, may be considered as a circumstance tending to support a directory construction."). In *Hines,* the court held that failure to give written notice at least thirty days before filing a Deceptive Trade Practices Act action pursuant to the statutory requirements did not require dismissal of suit when the purpose of the statute could best be served by abatement. *Id.* at 468–69.

■ The Secretary of State requested the 1997 amendment to section 232.008 of the Election Code, which resulted in the addition of subsection (d). The Secretary's purpose in requesting the amendment was to ensure that the chief elections officer of the State was informed of any election contests, not to create a jurisdictional prerequisite to either bringing or maintaining an election contest. Because the purpose of section 232.008(d) was to provide notice to the Secretary of State for informational purposes only, we conclude that appellants failure to timely notify the Secretary of State, pursuant to the statute, did not deprive the trial court of subject-matter jurisdiction.

■ The same reasoning applies to appellees' jurisdictional claim regarding section 232.012(d) of the Election Code. Section 232.012 provides in pertinent part:

(d) After the clerk receives the officer's return showing service of citation, the clerk shall promptly notify the district judge of that fact. The judge shall set the contest for trial for a date not later than the fifth day after the date by which the contestee must answer.

Tex. Elec.Code Ann. § 232.012(d) (West 1986). The language of section 232.012(d) is not unlike the statute at issue in *State v. $435,000,* 842 S.W.2d 642, 642 (Tex.1992), which required that "after the State initiated a forfeiture action and a claimant filed a verified answer to recover the property, 'a time for hearing on forfeiture shall be set within 30 days.'" The Texas Supreme Court determined that the issue was not whether use of the term "shall" was mandatory, but what consequences followed a failure to comply. *Id.* at 644. Noting that the purpose of the statute was to compel the trial court to hear the case promptly, the supreme court concluded that the statute afforded the parties a right to so compel the trial court to hear the case promptly. *Id.* The supreme court refused, however, to extend a sanction of dismissal as a result of the trial court's failure to set the case, not only because it did not follow the purpose of the statute, but also because the language of the statute did not specify a consequence for the court's failure to act within the time prescribed under the statute. *Id.*

Here, too, the language of section 232.012(d) of the Election Code compels the trial court to set the election contest for trial within a specific period of time. We agree that dismissal of the contest action would not serve the purpose of the statute, and we hold that failure to comply does not deprive the trial court of subject-matter jurisdiction. Accordingly, we overrule appellees two cross-points of error.

### Election Code Violations

In their sole point of error, appellants contend the primary administrator, O'Grady, and his deputy, McNamara, violated mandatory provisions of the Election Code, requiring automatic invalidation of the election. They argue that the trial court erred in concluding that the violations did not affect the outcome of the election because, they assert, the violations were numerous, constituted more than minor deviations from the requirements of the Election Code, were done with knowledge and intent, and were done without proper authority.

In their brief and in oral argument, the parties discuss the applicability of several

provisions of the Election Code, including section 43.001, and they do not dispute its strict requirements. Section 43.001 provides that "[e]ach election precinct established for an election shall be served by a single polling place located *within the boundary of the precinct.*" Tex. Elec.Code Ann. § 43.001 (West 1986) (emphasis added). Section 43.001 has two statutory exceptions, consolidation under section 42.009 and combining under section 42.0051. *See id.* §§ 42.009, .0051 (West Supp.1998). Pursuant to section 42.009, the executive committee of a political party holding a primary election is granted authority to "order two or more county election precincts consolidated *into a single precinct.*" *Id.* at 42.009 (emphasis added). Section 42.0051 grants the executive committee authority to combine county election precincts when changes in county election precinct boundaries, caused by a redistricting plan, result in precincts with less than 500 (or 750 in some instances) registered voters. *See id.* § 42.0051.

■ In this instance, the primary administrator joined the polling places of a total of nineteen election precincts as a result of a shortage of polling places and election workers. Consequently, the polling places for several election precincts were fixed outside the boundaries of those precincts, in violation of section 43.001 of the Election Code. Further, the justification and method for joining the precincts do not fall within either statutory exception to section 43.001. The precincts themselves, however, remained separate, both in terms of their identities and their record-keeping, thereby excluding them from consolidation under section 42.009 of the Election Code. Nor were the precincts "combined" as a result of a redistricting plan; the primary administrator simply joined certain polling places due to the fact that he could not find a polling place or election workers for those precincts; the joining of the nineteen polling places therefore did not constitute combining of precincts under section 42.0051 of the Election Code. We conclude that the primary administrator's joining of the nineteen election precinct polling places violated section 43.001 insofar as polling places were not within the boundaries of a precinct.

■ Appellants also complain that the primary administrator joined the polling places without proper authority. Section 43.003 of the Election Code provides in pertinent part that "[t]he *county chair of a political party* holding a primary election shall designate the location of the polling place for each election precinct in the primary...." *Id.* § 43.003 (West Supp.1998) (emphasis added). This statutory grant of authority cannot be delegated. *See generally, Countz v. Mitchell,* 120 Tex. 324, 38 S.W.2d 770, 774 (1931) ("If the duty of calling the election in question devolved upon the county board of trustees, then that agency, *and it alone,* was authorized to fix the time and *place* for holding such election. It *could not delegate* the performance of this duty to the county judge of the county." (Emphasis added.)). The record reflects that the executive committee, which included Chairperson Jan Galbraith as a member, appeared to delegate to O'Grady the authority to make all decisions regarding the location of the precinct polling places in its January 13, 1998 meeting. The record also reflects, however, that Galbraith executed a list of the joined polling places for posting on February 17, 1998. The list was prepared by O'Grady, but Galbraith acted to designate the polling places by signing the list. The fact that the list was never posted does not render Galbraith's formal designation invalid. Therefore, the trial court could reasonably conclude that by executing the list of joined polling places for posting on February 17, Galbraith retained ultimate authority in the matter and did not violate section 43.003.

Having concluded that the primary administrator and other Republican Party officials violated section 43.001 of the Election Code, we must nonetheless affirm the judgment of the trial court. Courts have generally held that statutes regulating the manner of holding an election are directory in the sense that their violation does not justify an order setting aside the election. *See Prado v. Johnson,* 625 S.W.2d 368, 369–70 (Tex.Civ.App.— San Antonio 1981, writ dism'd w.o.j.); *Little v. Alto Indep. Sch. Dist.,* 513 S.W.2d 886, 891 (Tex.Civ.App.—Tyler 1974, writ dism'd

w.o.j.); *see also Sawyer v. Bd. of Regents of Claredon Junior College*, 393 S.W.2d 391 (Tex.Civ.App.—Amarillo 1965, no writ); *Minthorn v. Hale*, 372 S.W.2d 752 (Tex.Civ. App.—Beaumont 1963, no writ); *Scott v. McLennan County*, 306 S.W.2d 943 (Tex.Civ. App.—Waco 1957, writ ref'd n.r.e.); *Baker v. Scranton Indep. Sch. Dist.*, 287 S.W.2d 210 (Tex.Civ.App.—Eastland 1956, no writ); *Kincannon v. Mills*, 275 S.W. 1083 (Tex.Civ. App.—Waco 1925, writ dism'd w.o.j.). In the nineteen election precincts whose polling places were joined, 1,048 qualified voters cast their ballots with the assumption that their votes would be counted in the March 10, 1998 Republican party primary election. "[C]ourts should not disfranchise the . . . voters because an official failed to follow the strict letter of the [Election] [C]ode." *Alvarez v. Espinoza*, 844 S.W.2d 238, 243 (Tex.App.— San Antonio 1992, writ dism'd w.o.j.). While we do not approve an election official's violation of section 43.001 or any other procedural requirement, we recognize in this instance that "a sanction for the sins of the . . . official should not [be] visited upon the voter." *Id.*

> The purpose of the [Election] Code is to prohibit error, fraud, mistake, and corruption, and yet it may not be used as an instrument of disfranchisement for irregularities of procedure. Since the will of the legal voters as expressed at the polls is the matter of paramount concern, and, in the absence of any showing of fraud, or reasonable indication that such will has not been fairly expressed and the evidence thereof properly preserved, the courts have been liberal in construing and enforcing as directory only the provisions of the

election laws which are not upon their face clearly mandatory.

*Prado*, 625 S.W.2d at 369–70; *see also Deffebach v. Chapel Hill Indep. Sch. Dist.*, 650 S.W.2d 510, 512 (Tex.App.—Tyler 1983, no writ).

■ Section 221.003 of the Election Code provides that the tribunal hearing an election contest shall attempt to ascertain whether the outcome of the contested election is not the "true outcome" because either (1) "illegal votes were counted," or (2) an election officer "prevented eligible voters from voting," "failed to count legal votes," or "engaged in other fraud or illegal conduct or made a mistake." Tex. Elec.Code Ann. § 221.003 (West 1986).[1] The contestant bears the burden of proving that violations occurred and that they materially affected the outcome of the election. *See Guerra v. Garza*, 865 S.W.2d 573, 576 (Tex.App.—Corpus Christi 1993, writ dism'd w.o.j.); *Alvarez*, 844 S.W.2d at 242; *Green v. Reyes*, 836 S.W.2d 203, 208 (Tex.App.—Houston [14th Dist.] 1992, no writ). "The standard of review for an appeal from a judgment in an election contest is whether the record shows that the trial court abused its discretion." *Guerra*, 865 S.W.2d at 576 (citing *Green*, 836 S.W.2d at 208; *Goodman v. Wise*, 620 S.W.2d 857, 859 (Tex.Civ.App.—Corpus Christi 1981, writ ref'd n.r.e.)).

■ Courts have held that illegal votes are not to be counted when violations of certain provisions of the Election Code result from *voter* action. *See Harrison v. Jay*, 153 Tex. 460, 271 S.W.2d 388, 389 (1954) (illegal votes resulting from voters voting in a different precinct in violation of section 11.003 of the Election Code excluded);[2] *Alvarez*, 844

---

1. Section 221.003 of the Election Code governs the court's scope of inquiry in an election contest, providing in relevant part:

    (a) The tribunal hearing an election contest shall attempt to ascertain whether the outcome of the election contest, as shown by the final canvass, is not the true outcome because:
    (1) illegal votes were counted; or
    (2) an election officer or other person officially involved in the administration of the election:
    (A) prevented eligible voters from voting;
    (B) failed to count legal votes; or
    (C) engaged in other fraud or illegal conduct or made a mistake.

    (b) In this title, "illegal vote" means a vote that is not legally countable.
    Tex. Elec.Code Ann § 221.003 (West 1986).

2. In *Harrison v. Jay*, the Texas Supreme Court recognized an exception to section 11.003 of the Election Code, created by case law, where votes cast at a polling place outside the boundaries of an election precinct have been allowed and counted as legal votes when "the whole of the qualified electors voting at the election all voted at the same polling place." 153 Tex. 460, 271 S.W.2d 388, 389 (Tex.1954); *see also Boroughs v. Williamson*, 312 S.W.2d 717, 720–21 (Tex.Civ. App.—El Paso 1958, writ dism'd w.o.j.) (stating that supreme court in *Harrison* indicated that "if

S.W.2d at 247–48 (votes cast by nonresidents in violation of section 1.015 of Election Code were not counted); *Green,* 836 S.W.2d at 208 (votes cast by same voter in both Republican Party primary and Democratic Party primary runoff election held to be illegal); *Chumney v. Craig,* 805 S.W.2d 864, 870 (Tex. App.—Waco 1991, writ denied) (contestant failed to show that votes were illegal, i.e., that votes were cast by persons who did not own property); *Medrano v. Gleinser,* 769 S.W.2d 687, 688 (Tex.App.—Corpus Christi 1989, no writ) (votes cast by unqualified voters and voters who lived outside the Commissioner's precinct were illegal). Violations of directory provisions stemming from the conduct of election officials, however, do not result in illegal votes. *See Alvarez,* 844 S.W.2d at 242–243 (election officials' violations of sections 32.006, 87.002, 13.038 and 13.039 did not justify voiding election because provisions violated were directory); *Prado,* 625 S.W.2d at 369–70 (violation by election officials of statutory procedures under Election Code held to be directory and will not render election void absent showing of fraud). Because section 43.001 is directory and dictates procedures that the *election official* must follow, its violation did not result in illegal votes being counted.[3]

■ Having concluded that no illegal votes were counted, section 221.003 of the Election Code requires us to examine the actions of the election officials who violated section 43.001 of the Election Code. First, we find insufficient evidence in the record tending to show that any eligible voters were prevented from voting. *See* Tex. Elec.Code Ann. § 221.003(a)(2)(A). The trial court specifically found that no witness testified he was prevented from voting. This finding is not challenged on appeal.[4] Second, the record contains no evidence that election officials failed to count legal votes. *See id.* § 221.003(a)(2)(B). Third, the contestants have not alleged that any election official engaged in "illegal conduct." *See id.* § 221.003(a)(2)(C). Assuming appellants properly alleged O'Grady and McNamara acted with a fraudulent purpose, the trial court, in its findings of fact and conclusions of law, found that the reasons for joining the election precinct polling places were not fraudulent and that O'Grady and McNamara's personal opinions did not "influence any of their official actions in discharge of their duties as primary officials." The court concluded that "there was no fraud or malicious motive and no evidence that the election was unfair." Appellants do not challenge the sufficiency of these findings of fact and conclusions of law on appeal. Although the Election Code does not define the term "mistake," we hold that the mistake contemplated by the statute must be one of such magnitude as to affect the true outcome of the election; under the circumstances of the present case, the violation of section 43.001 does not constitute such a mistake within the meaning of section 221.003(a)(2)(C). Were we to conclude otherwise, there would be no difference under the Election Code in the legal consequences of a violation of a directo-

all of the voters went across the line and voted where the judges had set up the voting box, that it might consider those votes legal").

**3.** The dissenting portion of Judge Powers's opinion seems to be based almost exclusively on a perceived violation of section 11.003 of the Election Code, which provides that " a person may vote only in the election precinct in which the person resides." Tex. Elec.Code Ann. § 11.003 (West 1986). That provision is not applicable here. Section 11.003 is not, it seems to us, intended to regulate the geographical location of a polling place or ballot box, but rather was intended to prevent voters from voting in a precinct election different from the one in which they are entitled to vote according to their residence. For example, a voter who resides in hypothetical precinct 1 may not vote in a pre-

cinct 2 election. All of the cases cited by Judge Powers involved voters who cast their ballots in a precinct election other than the correct one for the precinct of their residence. That did not happen here. There were separate ballot boxes for each precinct (even though some of them were in the same location), and there is no indication that any voters put their ballots in the wrong box. This is not a violation of section 11.003. Indeed, none of the parties to this election contest have raised or discussed section 11.003 in any way, shape, or form.

**4.** Findings of fact which are not challenged on appeal are binding on the parties and the reviewing court. *See Guerra v. Garza,* 865 S.W.2d 573, 575 (Tex.App.—Corpus Christi 1993, writ dism'd w.o.j.).

ry statute versus a violation of a mandatory statute.

Appellants have not shown that the violation of section 43.001 of the Election Code affected the outcome of the election, and the trial court's findings and conclusions regarding the same are not challenged on appeal.[5] Therefore, we conclude that the trial court did not abuse its discretion in holding that the violations were not grounds for setting aside the election results. We overrule appellants' sole point of error.

## CONCLUSION

We overrule all points of error and cross-points and affirm the trial court's judgment. Pursuant to section 232.014(e) of the Election Code, we will not entertain a motion for rehearing.

POWERS, Justice, dissenting and concurring.

Section 11.003 of the Election Code declares that "a person *may vote only* in the election precinct in which the person resides," and section 43.001 requires that "[e]ach election precinct established for an election *shall* be served by a single polling place located within the boundary of the precinct." Tex. Elec.Code §§ 11.003, 43.001 (emphasis added).[1] The two statutes were obviously intended to operate together; section 43.001 is essential to allow compliance with section 11.003.

It is undisputed that a large number of voters cast their ballots at polling places outside the election precincts in which they resided. Under section 11.003, these votes would appear at least to be illegal. The majority conclude, however, that "no illegal votes were counted." This conclusion appears to rest on the following rationale: Section 11.003 is mandatory in some cases but merely directory in others. The statute is mandatory when no misconduct or mistake on the part of election officials caused the voters to cast their ballots in the wrong precinct. In those cases, the "illegal votes are not to be counted." *Harrison v. Jay,* 153 Tex. 460, 271 S.W.2d 388, 389 (1954). Section 11.003 is merely directory, however, in cases like the present where voters cast their ballots outside their precinct because of misconduct or mistake on the part of election officials. "Violations of directory provisions stemming from the conduct of election officials," the majority say, "do not result in illegal votes." *Alvarez v. Espinoza,* 844 S.W.2d 238, 242–43 (Tex.App.—San Antonio 1992, writ dism'd w.o.j.); *Prado v. Johnson,* 625 S.W.2d 368, 369–70 (Tex.Civ.App.—San Antonio 1981, writ dism'd). (Neither *Alvarez* nor *Prado* deals with section 11.003 or section 43.001 of the Election Code). I confess I do not understand fully the rationale by which the majority conclude that the legislature intended that the single sentence of section 11.003 should be both mandatory and directory at the same time. In my view, section 11.003 is *always* mandatory in effect, a matter quite independent of whether its violation should result in setting aside an election.

It would hardly be contended that all provisions of the Election Code are merely directory; some are, in fact, criminal statutes. And I believe it more useful to confine the discussion to judicial decisions that apply sec-

---

**5.** Even if appellants had challenged the sufficiency of the trial court's findings of fact and conclusions of law on appeal, we conclude from our examination of the record that such findings of fact and conclusions of law are supported by competent evidence and are therefore binding on this Court. *See Deffebach v. Chapel Hill Indep. Sch. Dist.,* 650 S.W.2d 510, 512 (Tex.App.—Tyler 1983, no writ); *Vandyke v. Austin Indep. Sch. Dist.,* 547 S.W.2d 354 (Tex.Civ.App.—Austin 1977, no writ).

**1.** The word "shall," used in section 43.001, is ordinarily mandatory in effect. By expressly incorporating the Code Construction Act into the Election Code, the legislature presumably intend-

ed the word "shall," used in section 43.001, "to impose a duty." *See* Tex. Elec.Code § 11.003, Tex. Gov't Code § 311.016 (West Supp.1998). The expression "may vote only," as used in Election Code section 11.003, constitutes a permission coupled with a limitation. *See* Tex. Gov't Code § 311.016; *Am. Nat. Ins. Co. v. Rodriguez,* 152 S.W. 871, 872 (Tex.Civ.App.—San Antonio 1913, no writ). The majority have not stated what legislative purpose requires a construction that sections 11.003 and 43.001 are merely directory. *See Inwood North Homeowners' Ass'n, Inc. v. Meier,* 625 S.W.2d 742, 743–44 (Tex.Civ.App.—Houston [1st Dist.] 1981, no writ).

tion 11.003—the statute said to be violated in the present case. These decisions contradict the notion that the statute is merely directory. The requirement that voters cast their ballots in the election precinct of their residence was originally a constitutional mandate applicable in all elections. Tex. Const. art. VI, § 2 (1876). A constitutional amendment in 1921 eliminated the requirement entirely; manifest abuses led in 1932 to re-adoption of the constitutional provision that voters must cast their ballots in the precinct of their residence in certain elections—those pertaining to the issuance of government bonds, assumption of debt by government, or lending government credit. Tex. Const. Ann. art. VI, § 3a. *See Ex parte White*, 33 Tex. Crim. 594, 28 S.W. 542, 544 (App.1894). (The majority rationale raises the interesting question of whether the constitutional requirement is mandatory or directive in the elections named).

While the constitutional requirement applied to all elections, it was held in 1909 that votes cast outside the precinct of the voters' residence were illegal and could not be counted. *McCormick v. Jester*, 53 Tex.Civ.App. 306, 115 S.W. 278, 287 (1909, writ dism'd). ("This is a constitutional requirement, and cannot be ignored."). Even after the constitutional requirement was restricted to its present scope, a statute making the same requirement remained in effect. It required that "[a]ll voters shall vote in the election precinct in which they reside." This statute, the supreme court said, "needs no construction or explanation and by its very terms requires that a voter must cast his vote in the voting precinct where he resides. The decided cases have held this requirement must be obeyed *if the vote is to be counted.*" *Harrison*, 271 S.W.2d at 389 (emphasis added).[2] If the vote may not be counted, when

cast outside the precinct of the voter's residence, it necessarily follows that section 11.003 is mandatory—such votes *must* be deducted from the canvass result in arriving at the true outcome of an election. *Harrison* has in this respect been followed consistently in applying section 11.003 and its predecessors: *See Greater Beauxart Garden Mun. Util. Dist. v. Cormier*, 596 S.W.2d 597, 601 (Tex.Civ.App.—Beaumont 1980, no writ); *Zuniga v. Almaraz*, 514 S.W.2d 331, 334 (Tex.Civ.App.—San Antonio 1974, no writ); *Guerra v. Pena*, 406 S.W.2d 769, 777 (Tex. Civ.App.—San Antonio 1966, no writ); *Teeple v. Beedy*, 316 S.W.2d 311, 313 (Tex.Civ. App.—Amarillo 1958, no writ); *Boroughs v. Williamson*, 312 S.W.2d 717, 720–21 (Tex. Civ.App.—El Paso 1958, writ dism'd w.o.j.).

It is therefore true, as the majority says, that when voters cast ballots outside the precinct of their residence, free of misconduct or mistake by election officials, the votes shall not be counted. It is not true, however, that an opposite result is required when such votes are caused by misconduct or mistake on the part of election officials. In *Harrison* and *Boroughs*, the votes were held to be illegal even though voters cast their ballots in the precinct required erroneously by their poll-tax receipts issued to them for use by election officials. In *Greater Beauxart* and *Teeple*, election officials mistakenly designated polling places outside the district; the votes were therefore illegal and not counted.[3] In *Zuniga*, an election official mistakenly told the voter she should vote in the precinct even though she told the official she resided in another precinct; the vote was illegal and not counted.

I would hold Election Code sections 11.003 and 43.001 are mandatory. Ballots cast by voters outside the election precinct in which

---

2. The *Harrison* court distinguished "cases where the whole of the qualified electors ... all voted at the same polling place." *Harrison*, 271 S.W.2d at 389. While the *Harrison* opinion does not identify the decisions it distinguished as inapplicable, the court evidently referred to *Anderson v. Crow*, 260 S.W.2d 227, 233–34 (Tex.Civ.App.—Austin 1953, mand. overr.); *Waters v. Gunn*, 218 S.W.2d 235, 236–37 (Tex.Civ.App.—Amarillo 1949, writ ref'd n.r.e); and *Parks v. West*, 108 S.W. 466, 470 (Tex.Civ.App.1908), *rev'd*, 102 Tex.

11, 111 S.W. 726 (1908). These decisions rest on the idea that when *all* voters in a government unit vote at a *single* voting place, the governmental unit itself is the election precinct contemplated by section 11.003 and its predecessors.

3. Contrary to the majority opinion, in these two decisions the voters voted in the right box but outside the geographical boundaries of the district.

they resided were therefore illegal and may not be counted in the present case.

Election contests are statutory proceedings authorized and governed by the Election Code. In such proceedings, the court must "ascertain whether the outcome of the contested election, as shown by the final canvass, is not the true outcome because ... illegal votes were counted." Tex. Elec.Code § 221.003. In the present contest, the record shows that deducting the illegal votes cast for Shaw—votes cast in violation of section 11.003—did not affect the result. After deducting the illegal votes, Shaw received 3,869 votes and Honts 3,703. With regard to the contest between Moten and Wallace, the record does not permit a court to determine the true outcome of the election in Precinct 250. I would, accordingly, hold that election void. *See* Tex. Elec.Code § 221.012(b).

I therefore concur in the judgment respecting the contest between Honts and Shaw; I dissent from the judgment respecting the contest between Moten and Wallace.